## UNITED STATES *v.* KALES.

No. 35.   Argued November 14, 1941.—Decided December 8, 1941.

*Mr. Arnold Raum,* with whom *Assistant Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *Harry Marselli* were on the brief, for the United States.

188

*Mr. Hal H. Smith,* with whom *Messrs. Archibald Broomfield* and *Laurence A. Masselink* were on the brief, for respondent.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

Two questions are presented for decision by the record in this case.  First, was a letter, written to the tax collector

by respondent taxpayer and lodged with the Commissioner, a claim for refund of overpaid taxes so as to stop the running of the statute of limitations against the claim? Second, did a judgment, refunding taxes paid to the collector in 1925 upon profits from the sale of certain shares of stock in 1919, bar a later suit for a further recovery of 1919 taxes, overpaid in 1920 to a different collector upon profits from the same transaction?

In 1919, respondent was the owner of 525 shares of the stock of the Ford Motor Company which she had acquired before March 1, 1913. In anticipation of the sale of the stock, she requested and obtained, in 1919, from the Commissioner of Internal Revenue, a ruling that the March 1st, 1913, value of the stock was $9,489 per share. She then sold the stock for $12,500 a share, and reported in her income tax return for 1919 the profit over the March 1, 1913 value thus established. In 1920, she paid the tax so computed, amounting to $1,216,086, to Collector Grogan, since deceased.

In March, 1925, the Commissioner made a jeopardy deficiency assessment against respondent for an increase of profit on the sale of the stock in 1919, on the ground that respondent had overstated the 1913 value of the stock in her 1919 tax return. Respondent paid the additional assessment, amounting to $2,627,309, to Collector Woodworth on March 24, 1925. At the same time, she lodged with the collector and the Commissioner a written protest, dated March 23, 1925, against the jeopardy assessment on the ground, among others, that the Commissioner was without authority in law to reopen and set aside the 1913 valuation of the stock as determined in 1919 by the then Commissioner, on the basis of which respondent had sold her stock. By paragraph 9 of the protest, respondent also advised the collector, the Commissioner and the Government that, while it was respondent's position that the deficiency assessment was illegal and void for this and

other reasons stated, if the Internal Revenue Department, the Board of Tax Appeals or any court having jurisdiction should hold that the assessment of March 1, 1913 value of her stock, made in 1919, should be vacated, set aside, reopened or reversed, then respondent would insist that the valuation fixed by the Commissioner in 1919 was less than the fair market value as of March 1, 1913, that the 1919 tax which she had paid in 1920 was correspondingly excessive, and that she should recover the tax to the extent of such excess when the fair value had been determined. She added in paragraph 10 that "if for any reason a revaluation shall be had," she "will insist" that the stock was greatly undervalued by the Department and "will claim the right to a refund" of the excess tax collected.

After a claim duly filed for refund of the amount of the jeopardy assessment, paid in 1925, respondent brought suit in the district court against Collector Woodworth, which resulted in a judgment for the taxpayer for the full amount of the assessment with interest. The Circuit Court of Appeals for the Sixth Circuit affirmed the judgment, *Woodworth* v. *Kales*, 26 F. 2d 178, which was satisfied in November, 1928.

September 24, 1928, respondent filed a formal claim for refund of the taxes paid in 1919, stated to be an amendment of the claim for refund contained in her letter of protest of March 23, 1925. By the amendment, respondent sought an additional refund of income taxes, paid for the year 1919, in the amount of $195,710 with interest, upon the ground that the Ford stock, as the Board of Tax Appeals had then determined in James Couzens, 11 B. T. A. 1040, had a March 1, 1913 value of $10,000 per share, and that she should accordingly have the benefit of this higher basis in computing her profit. At a hearing granted by the General Counsel for the Bureau of Internal Revenue on June 13, 1929, the amended claim was considered on the merits. Again, in January, 1933, a mem-

ber of his staff, at a conference with respondent's attorney, advised the latter that the informal claim was filed in time and was good as an informal claim.

By letter of June 4, 1935, however, the Commissioner declined to act upon it, on the single ground that because respondent's judgment for refund of the jeopardy assessment for 1919 taxes had been satisfied "the Bureau is precluded from giving further consideration in any respect to the matter of your income tax liability for the taxable year 1919." This was followed by the Deputy Commissioner's letter of August 20, 1935, to respondent, stating that "the refund claim filed in 1925 was merged into the judgment . . . and you were, therefore, precluded from filing an amendment to the earlier claim which had been finally adjudicated." The letter added "The adjudication by the court removed this matter from the realm of administrative action other than to make refund as directed by the judgment."

Collector Grogan having retired from office and having died, the present suit for refund of the overpayment of the tax claimed was brought in the district court against the United States under the provisions of § 1122 (c) of the Revenue Act of 1926. This section authorizes suits in the district court for the refund of overpayment of revenue taxes, even if in excess of $10,000, to be brought against the United States, where the collector to whom the overpayment was made is dead or is not in office when the suit is brought. The judgment of the district court dismissing the suit on motion was reversed by the Circuit Court of Appeals, 115 F. 2d 497, which held that the letter of March 23, 1925, was a timely informal claim for refund which had been perfected by the formal amended claim filed in September, 1928, that consequently the respondent's cause of action was not barred by limitation and that recovery was not precluded by the previous judgment for recovery of the jeopardy assessment for 1919. We granted

certiorari, 313 U. S. 553, upon petition of the Government, which urged that any further recovery for overpayment of the 1919 tax was barred by the judgment in the respondent's suit and recovery of the jeopardy assessment for that year, a question of importance in the administration of the revenue laws. The Government urges as grounds for reversal that, if respondent's letter of March 23, 1925 be considered a claim for refund, any recovery is barred by the 1928 judgment, and that in any event the letter was not a claim for refund and does not support the present suit.

*First.* Concededly, recovery of the 1919 tax, paid in 1920, is not barred by limitation if respondent's letter of March 23, 1925, be treated as a claim for refund. The Collector of Internal Revenue extended the respondent's time to make return of her 1919 income taxes for thirty days from March 15, 1920, and her letter was placed with the Commissioner within five years of the expiration of the extended time. Section 284 (h) of the 1926 Revenue Act, 44 Stat. 9, provides that a claim for refund of 1919 taxes shall not be barred by a lapse of time if filed within five years from the date when the return was due. Revised Statutes § 3226, 26 U. S. C. § 1672, makes the filing of a claim for refund in accordance with the law and Treasury regulations a condition precedent to suit to recover it. Article 1306 of Treasury Regulations 65, promulgated under the 1924 Revenue Act and applicable here, provides that claims for refund shall be made upon Form 843, setting forth all the facts relied on under oath. But Treasury Decision 4266, promulgated March 27, 1929, authorizes the Commissioner to make a refund after the expiration of the statutory period of limitation, even though no formal claim has been filed before that time, in any case in which an informal or defective claim, duly filed prior to the expiration of the period of limitation and stating specifically the grounds for the refund, is perfected by the filing of a claim prior to May 1, 1929.

This Court, applying the statute and regulations, has often held that a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim, where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period. *United States* v. *Memphis Cotton Oil Co.,* 288 U. S. 62; *United States* v. *Factors & Finance Co.,* 288 U. S. 89; *Bemis Bro. Bag Co.* v. *United States,* 289 U. S. 28; *Moore Ice Cream Co.* v. *Rose,* 289 U. S. 373, 384. This is especially the case where such a claim has not misled the Commissioner and he has accepted and treated it as such. *Bonwit Teller & Co.* v. *United States,* 283 U. S. 258; *United States* v. *Memphis Cotton Oil Co., supra,* 70.

In applying these guiding principles to the case in hand, it is necessary to read the letter of March 23, 1925, in the light of the peculiar circumstances then well known to the Commissioner and referred to in the letter. The letter dealt with two distinct subjects. One was the jeopardy assessment which the taxpayer was about to pay and did in fact pay to the collector on the following day when the letter in duplicate was given to the collector and the Commissioner. The other, stated in paragraphs 9 and 10 of the letter, related to the liability of the Government for overpayments of 1919 taxes made to Collector Grogan in 1920, in the event that the Commissioner's 1919 assessment of the Ford stock should be set aside by the courts or administrative action. In that event, the letter recites that the 1919 valuation was too low, the tax paid in 1920 was too high, and asserts the taxpayer's consequent "right to a refund of said tax to the extent of such excess."

The letter states correlative alternative rights on which the taxpayer relied. One was the challenge to the validity

of the 1925 jeopardy assessment on the ground that the appraisal in 1919 of the then Commissioner was unalterable. The other was respondent's right to a refund of taxes paid in 1920 in the event that the 1919 appraisement of the stock should be set aside by the Bureau or be determined to be erroneous. Whether the Commissioner would insist upon changing the 1919 appraisal of her stock, and whether in any case the Board of Tax Appeals would find a different 1913 value for the stock, were matters for future determination. When respondent filed her letter, the time within which a claim for refund could be filed was about to expire, and the occurrence of the contingencies on which a recovery could be had by respondent remained uncertain. But the Commissioner could have been left in no doubt that she was setting forth her right to a refund in the event of a departmental revision of its 1919 valuation of her stock. Her letter was present notice that, if the department insisted upon changing its original decision as to the 1913 value, she asserted that the stock had been undervalued and in consequence of the undervaluation she had a "right to a refund of said [1919] tax to the extent of such excess." Her concluding paragraph made the like assertion "if for any reason a revaluation shall be had" of the Ford stock. At that time, the Commissioner had assessed deficiencies aggregating $31,000,000 against former Ford stockholders who had sold stock which they had acquired before March 1, 1913. See James Couzens, 11 B. T. A. 1043–4. Respondent's amended formal claim of September 11, 1928, only made more specific the allegations of her earlier informal claim by stating that the Board of Tax Appeals had found the 1913 value of the stock to be $10,000 per share, and by computing the excess tax, the right to which had been asserted in the earlier claim.

The fact that respondent had originally stated her claim in the future tense, saying that in the event of depart-

mental revision of the valuation of the stock she "will insist" on a higher valuation and "will claim the right to a refund," does not, in the circumstances of this case, lend even grammatical support to the Government's contention. Such a use of the future tense in stating a claim may, with due regard to the circumstances of making it, rightly be taken as an assertion of a present right. See *Georgia, F. & A. Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 197–8; cf. *Moore Ice Cream Co.* v. *Rose, supra,* 384, reversing 61 F. 2d 605. Here the claim is alternative and contingent upon future events. The statement that upon the happening of the contingency the claim will be prosecuted is not inconsistent with the present assertion of it. It is indeed an appropriate, if not the necessary, phraseology for the present assertion of an alternative claim with respect to which a taxpayer, in his presentation of an informal tax refund claim, should be in no less favorable position than the plaintiff in a suit at law who is permitted to plead his cause of action in the alternative. See Rule 8 (e) of the Federal Rules of Civil Procedure; *United States* v. *Richards,* 79 F. 2d 797.

If the point were more doubtful than we think it is, it would be resolved by the consistent administrative treatment of respondent's letter of March 23, 1925, and the later amendment as a claim for refund. Neither the original nor the amended claim has ever been rejected as inadequate by the Commissioner or the Bureau. There has been no objection to the claim on the ground that it was informal, deficient in its content, or untimely. Acknowledgment of the letter of March 23, 1925, by the Commissioner referred to the jeopardy assessment, but made no mention of the asserted right to refund of taxes paid in 1920. After the amendment was filed in September, 1928, the claim was held under advisement by the Bureau for nearly seven years. As we have said, it was consistently treated in correspondence by the Bureau and at hearings

during this period as a claim for refund. The Commissioner finally, by his letters of June 4, 1935 and August 25, 1935, declined to consider the claim on the sole ground that it was no longer a subject of administrative action because "the refund claim filed in 1925 was merged into the judgment" for refund of the tax paid on the jeopardy assessment. Not only do we think that this entire course of departmental action was an administrative construction of respondent's letter of March 23, 1925, conforming to our own interpretation of its words, but we think it was a waiver of the requirements of the regulations as to the formality and particularity with which the grounds for refund are required to be stated. *Bonwit Teller & Co.* v. *United States, supra,* 264; *United States* v. *Memphis Cotton Oil Co., supra,* 288 U. S. at p. 70; cf. *Tucker* v. *Alexander,* 275 U. S. 228, 231; *United States* v. *Garbutt Oil Co.,* 302 U. S. 528, 533.

*Second.* The Government argues that the right to recover for overpayment of income taxes in any tax year constitutes a single cause of action against the Government, and that the present suit by the respondent, seeking recovery of 1919 taxes, after having recovered the amount of the jeopardy assessment for the same year, involved an inadmissible splitting of her cause of action. In any event, it insists that no cause of action for recovery of overpayment of 1919 taxes could survive the recovery of the amount of the jeopardy assessment, since the judgment for that recovery merged all claims for overpayment of 1919 taxes and so foreclosed the present suit for additional overpayments of taxes growing out of the same transaction.

But we think these contentions disregard the statutory scheme which has been set up for the recovery from an internal revenue collector, of taxes which he had unlawfully collected. See *Sage* v. *United States,* 250 U. S. 33. Originally, payment under protest to an internal revenue

collector of illegally exacted taxes gave rise to a common law cause of action against the collector for restitution of the overpayment. *Elliott* v. *Swartwout,* 10 Pet. 137, 153, 156; *Moore Ice Cream Co.* v. *Rose, supra,* 375, and cases cited. By the protest the collector was informed of the contention of the taxpayer and was thus precluded from relieving himself, by payment into the Treasury of the moneys collected, from liability to make restitution. *Elliott* v. *Swartwout, supra; Smietanka* v. *Indiana Steel Co.,* 257 U. S. 1, 4. By a series of Congressional acts it was made the duty of the collector to pay to the Government the moneys collected, regardless of a protest. 12 Stat. 442; 13 Stat. 483; R. S. § 3210; 26 U. S. C. § 1761. But with imposition of this duty on the collector to pay over, the Government undertook to indemnify him upon certification by the court, either that there was probable cause for the act done by the collector, or that he acted under directions of the Secretary of the Treasury or other proper officers of the Government. 12 Stat. 741, § 12. In that event, no execution was to issue against him, but the amount of recovery was to be paid out of the Treasury. These provisions, carried into Revised Statutes § 989, are continued as 28 U. S. C. § 842. By § 1014 of the Revenue Act of 1924, 43 Stat. 253, 343, amending Revised Statutes § 3226, the requirement for protest of the payment was abolished.

While the effect of the certificate in indemnifying the collector has been said to convert the suit against him into a suit against the Government, at least so far as the ultimate incidence of the liability is concerned, *United States* v. *Sherman,* 98 U. S. 565, 567; *Moore Ice Cream Co.* v. *Rose, supra,* 289 U. S. at p. 381, the statutory provisions have not altered the nature and extent of the claims which the taxpayer is authorized to prosecute in suits against the collector. Originally it was the payment of the illegally exacted tax which gave rise to the cause of action. It

was the payment which designated the person against whom the suit might be brought and which measured the right of recovery. Payments made to one collector could not be recovered from another, and, since the causes of action against the two collectors were different, recovery upon one could not bar recovery upon the other.

After the enactment of legislation requiring collectors of customs to pay over to the Government duties collected under protest, 5 Stat. 348; R. S. § 3010, doubts arose whether suit could, in such circumstances, be maintained against them, since it was thought that the statutory command had relieved the collectors from personal liability. See *Cary* v. *Curtis,* 3 How. 235. But those doubts were put at rest by later acts of Congress establishing the continued right of the taxpayer to maintain a suit against such a collector notwithstanding payment over of his collections to the Treasury. 5 Stat. 727; R. S. § 3011; *Curtis's Administratrix* v. *Fiedler,* 2 Black 461, 479; *Arnson* v. *Murphy,* 109 U. S. 238, 241. A like uncertainty as to the effect of the statutes requiring internal revenue collectors to pay moneys collected to the Government was resolved by this Court's decisions in *Philadelphia* v. *Collector,* 5 Wall. 720, 731; *Collector* v. *Hubbard,* 12 Wall. 1, 13. As Congress had enacted provisions for indemnification of the collector by the Government, the implication necessarily arose that the taxpayer could maintain an action against him. See 12 Stat. 434, 729, 741; 13 Stat. 239.

The right of action thus continued is identical with that which existed before Congress had acted. Notwithstanding the provision for indemnifying the collector and protecting him from execution, the nature and extent of the right asserted and the measure of the recovery remain the same. It was payment to the collector which gave rise to the suit against him and limited the amount of the recovery. The judgment against the collector is a personal judgment, to which the United States is a

stranger except as it has obligated itself to pay it. See *Sage* v. *United States, supra; Smietanka* v. *Indiana Steel Co., supra,* 4, 5.

While the statutes have for most practical purposes reduced the personal liability of the collector to a fiction, the course of the legislation indicates clearly enough that it is a fiction intended to be acted upon to the extent that the right to maintain the suit and its incidents, until judgment rendered, are to be left undisturbed. Among its incidents is the right to a jury trial, which is not available in suits against the United States. 28 U. S. C. § 41 (20).

By no possibility could the respondent in the suit brought against Collector Woodworth in 1925 recover taxes paid to Collector Grogan in 1920, which she demands here. Recovery from one collector of the payment to him does not bar recovery on the different cause of action arising upon payment to the other, even though the two collections are for taxes arising out of the same transaction. *Sage* v. *United States, supra; Bankers Pocahontas Coal Co.* v. *Burnet,* 287 U. S. 308; cf. *Graham & Foster* v. *Goodcell,* 282 U. S. 409, 430; *Sunshine Coal Co.* v. *Adkins,* 310 U. S. 381, 403. The right to pursue the common law action against the collector is too deeply imbedded in the statutes and judicial decisions of the United States to admit of so radical a departure from its traditional use and consequences as the Government now urges, without further Congressional action.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.