S. Lasker Ehrman, of Little Rock, Ark. (Lonzo A. Ross, of Conway, Ark., and Grover T. Owens and E. L. McHaney, Jr., both of Little Rock, Ark., on the brief), for appellees.

Before SANBORN and RIDDICK, Circuit Judges, and LEMLEY, District Judge.

## UNITED STATES v. FRAUENTHAL et al.

### No. 12609.

Circuit Court of Appeals, Eighth Circuit.

Oct. 18, 1943.

SANBORN, Circuit Judge.

The administrators of the estate of Sam Frauenthal, a resident of Little Rock, Arkansas, who died December 4, 1935, brought this action to recover an overpayment of estate taxes. The Government asserted that the District Court was without jurisdiction, on the ground that no claim for refund had been filed with the Commissioner of Internal Revenue, as required by § 3226 of the Revised Statutes, as amended by § 1103 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 286, 26 U.S.C.A. Int.Rev.Acts, page 652, within the three year period of limitations, § 319(b) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 84, as amended by § 810(a) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 283, 26 U.S.C.A., Int.Rev.Acts, page 648. The District Court ruled that it had jurisdiction because a formal claim for refund,

filed by the administrators after the period of limitations had expired, was an amendment to an informal claim made within the period. The court entered judgment for the plaintiffs (appellees), from which this appeal is taken.

The facts are undisputed. The plaintiffs filed an estate tax return, pursuant to the Revenue Act of 1926, as amended by the Revenue Act of 1932, on May 18, 1936, showing a tax liability of $17,205.83. In this return, deductions had been taken for two contingent claims against the estate. One claim (known as Item 35 of Schedule I of the return) was for $33,589.90, being the principal amount and interest demanded in a suit commenced by Price Shofner, guardian of S. R. Thomas, in the Chancery Court of Pulaski County, Arkansas, against Sam Frauenthal, Ector R. Johnson, and others, apparently to recover alleged overpayments of fees of Frauenthal and Johnson for legal services. See Thomas v. Frauenthal, 201 Ark. 213, 144 S.W.2d 1054. The other claim (known as Item 39 of Schedule I) was for $5,555, the principal and interest of a note of Ector R. Johnson to Bankers Trust Company, endorsed by Sam Frauenthal. An examination of the return by a representative of the Commissioner of Internal Revenue resulted in some changes in valuations and in the disallowance of the deductions taken for these two contingent liabilities of the estate, and the determination of a deficiency in estate tax of $9,301.11.

On September 21, 1936, prior to the payment of any part of the estate tax, Jo Frauenthal, administrator, executed and delivered to the representative of the Commissioner a "Waiver of Restrictions Against Immediate Assessment and Collection of Deficiency in Estate Tax." This was upon a Treasury Department printed form 890. The waiver stated: "Pursuant to the provisions of section 308 (d) of the Revenue Act of 1926, the undersigned executor or administrator of the estate of Sam Frauenthal waives the restrictions provided in section 308(a) of the Revenue Act of 1926, and consents to the assessment and collection of a deficiency in estate tax in the sum of $9,301.11, together with interest thereon as provided by law." Then followed a typewritten insertion, reading: "The executor reserves the right to file a claim for refund for any tax resulting from the payment in whole or a part of Item 35 and Item 39, Schedule I,

which is contingent at this particular time." At the bottom of the waiver appeared the following: "Note.—This waiver does not extend the statute of limitations for refund or assessment of tax, and is not an agreement as provided under section 606 of the Revenue Act of 1928. The submission of the waiver will not prejudice the right to file a claim for refund of any portion of the tax, but will expedite the settlement of the case and will reduce the accumulation of interest, as the regular interest period terminates 30 days after the filing of the waiver or on the date of assessment, whichever is earlier."

On February 17, 1937, approximately five months after the waiver was signed and delivered, the estate tax of $26,506.94 ($17,205.83 reported by the administrators and $9,301.11, the deficiency determined by the Commissioner) was paid.

On April 29, 1937, the administrators paid the sum of $2,000 in satisfaction of the estate's contingent liability upon the Ector R. Johnson note (Item 39 of Schedule I). Judgment in the case of Shofner, Guardian v. Frauenthal et al. (Thomas v. Frauenthal, supra), (Item 35 of Schedule I) was finally entered May 1, 1941, against the defendants in that case, and the estate was required to pay, and did pay on that day, as its share of the judgment, $9,024.63. The administrators had expended as court costs and for the printing of briefs $375.94, making the total amount expended by the estate in connection with that case $9,400.-57.

On September 6, 1941, Jo Frauenthal, administrator, filed with the Collector of Internal Revenue a claim for refund of $2,006.50, the overpayment of estate tax resulting from the payment of the contingent claims disallowed as deductions. Attached to this claim was a "Statement of Reasons Why Deponent [Jo Frauenthal, Administrator] Believes That This Claim Should Be Allowed." In this statement the investigation made by an internal revenue agent of the estate tax return is referred to, and it is said: "Upon final determination all changes were agreed to with the exception of two items claimed as a deduction by the Administrator." Then follows a description of Items 35 and 39 of Schedule I, and a statement that they were disallowed by the revenue agent, and: "By agreement the Administrator and his attorneys agreed to accept the Revenue Agent's report with the stipulation

inserted as follows: 'The executor reserves the right to file a claim for refund for any taxes resulting fom the payment in whole or a part of item 35 and item 39, Schedule I, which is contingent, at this particular time.' " The statement also contains the following: "No claim was filed prior to this date for the reason that the matters in controversy were still in the courts and no determination could be reached by the Administrator until final judgment was rendered." There is nothing in the statement indicating that an informal claim had previously been filed or that the formal claim being made was offered as an amendment to a prior claim.

On October 4, 1941, the Commissioner denied the claim for refund on the sole ground that it was filed too late. This action was commenced on April 30, 1942. In their complaint, the administrators set out the facts substantially as we have outlined them, and, after alleging the denial by the Commissioner of the claim for refund filed September 6, 1941, on the ground that it was filed out of time, asserted: "Plaintiffs were unable to file a claim for refund within the three year period from date of the payment of tax for the reason that it was impossible to determine how much over-payment the administrators made, pending the final outcome of the litigation in the case of Shofner v. Frauenthal, et al., mentioned above, which was pending at the time of the death of the said Sam Frauenthal on December 4th, 1935, and was not finally determined until May 1st, 1941."

The Government moved for a dismissal of the complaint upon the grounds that the court was without jurisdiction and that the complaint failed to state a claim upon which relief could be granted. The court sustained the Government's motion as to so much of the administrators' claim as was based upon the payment of the Ector R. Johnson note, but overruled it in all other respects. The court assigned no reasons for its action. Item 39 of Schedule I was thus eliminated from the case.

After a trial of the issues of law, the court concluded that: "The 'reservation' inserted in the official form of waiver, was such an informal claim as could be amended after the lapse of time, and was such a claim as the Commissioner could have acted upon. The Commissioner not having acted upon the informal claim contained in the Waiver, and the Administrator within apt time having completed his claim, this Court has jurisdiction, as the filing of the informal claim tolled the running of the statute of limitations. The plaintiff is entitled to judgment for the amount of taxes which the estate has overpaid."

We think that neither the language of the reservation of "the right to file a claim for refund", nor the circumstances under which the reservation was made, nor the conduct of the parties respecting it, justifies the conclusion that it was an informal claim for a refund of any portion of the estate tax. At the time the reservation was made, the tax was still unpaid, and there was then no basis for any claim of overpayment or of miscomputation of the tax liability of the estate. If the administrators were intending to say, in the reservation, that when, and if, the contingent claims ceased to be contingent and were paid out of the estate, it should have the right to a refund of any resulting overpayment of estate tax, they should have used appropriate language to express their meaning. One would, we think, reasonably assume, from the language used in the reservation and the circumstances under which it was inserted in the waiver, that the administrators were notifying the Commissioner that, while they were acquiescing in the Commissioner's determination of deficiency in estate tax, they were not agreeing that the contingent claims disallowed as deductions might not ripen into liquidated liabilities and result in the tax, as determined, becoming excessive, and that, when the amount of the liability of the estate upon those claims was ascertained and paid, the administrators were to have the right to file claims for refund. The Commissioner was not required to assume that the "reservation" was an informal claim for a refund, or anything more than it purported to be, particularly in view of the fact that there was then no tax to refund, no basis for any contention that the tax as determined was excessive, and no reason to anticipate that, whatever the liability of the estate might be upon these contingent claims, it would not be determined within three years from the time the tax was paid. The Commissioner did not treat the "reservation" as a claim for refund; neither did the administrators. As already pointed out, they explained their failure to file a timely claim for refund, both in their formal claim and in their complaint.

It is not necessary in this case to decide whether the administrators could have inserted in the waiver an informal claim for refund which would have stopped the running of the statute of limitations and formed the proper basis for an amended claim after the contingent liabilities which were disallowed as deductions had ceased to be contingent and had ripened into definite liabilities. We go no further than to decide that the "reservation" contained in the waiver was not, and did not purport to be, a claim for refund.

The District Court was of the opinion that this case was ruled by United States v. Kales, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132, and Neilson v. Harrison, 7 Cir., 131 F.2d 205. In the Kales case (page 195 of 314 U.S., page 218 of 62 S.Ct., 86 L.Ed. 132), the Supreme Court said of the letter of the taxpayer which was held to be an informal claim for refund: "* * * Her letter was present notice that if the department insisted upon changing its original decision as to the 1913 value, she asserted that the stock had been undervalued and in consequence of the undervaluation she had a 'right to a refund of said [1919] tax to the extent of such excess'. Her concluding paragraph made the like assertion 'if for any reason a revaluation shall be had' of the Ford stock. At that time the Commissioner had assessed deficiencies aggregating $31,000,000 against former Ford stockholders who had sold stock which they had acquired before March 1, 1913. See James Couzens v. Commissioner of Internal Revenue, 11 B. T.A. 1040, 1043, 1044. Respondent's amended formal claim of September 11, 1928, only made more specific the allegations of her earlier informal claim by stating that the Board of Tax Appeals had found the 1913 value of the stock to be $10,000 per share, and by computing the excess tax, the right to which had been asserted in the earlier claim."

In Neilson v. Harrison, supra, the Commissioner of Internal Revenue, under a misinterpretation of the applicable law, had disallowed deductions taken for charitable contributions, and assessed a deficiency in income taxes. In a waiver of restrictions like that here involved, the taxpayer, who had already paid a part of the alleged deficiency, inserted the following language (page 207 of 131 F.2d): "This Waiver is signed with the distinct understanding that if the basis of computing charitable contributions when a capital loss is involved is at any time changed by a decision of the Supreme Court, or by change in your regulations, that this taxpayer will have the right to have the income revised in conformity with such change in your rulings or court decision, and by reason thereof this letter is hereby made a part of said Waiver." This was held to be an informal claim for refund.

In each of the two cases relied upon by the District Court, it appears that at the time the informal claim was made the tax or some portion of it had been paid, that there was an existing basis for claiming an overpayment, and that the taxpayer had pointed out the basis for the claim for refund, and in appropriate language had asserted the right to a refund of the alleged overpayment; whereas in the instant case the right reserved was "to file a claim for refund" if and when the two contingent claims disallowed had ripened into noncontingent liabilities.

This case is analogous to Ordway v. United States, 2 Cir., 37 F.2d 19, in which an executor asserted that a letter written by him to the Commissioner was an informal claim for refund. The letter informed the Commissioner that additional fees and commissions would be allowed during the administration of the estate, and that the executor would then file a claim for the refund of the appropriate amount of the estate tax already paid. The court said that the letter "was no more than a statement of the plaintiff's position and a forecast of what he proposed to do when his claim should come into being. It did not present or even purport to present a claim, and, indeed, it could not do so, for no claim then existed." Page 22 of 37 F. 2d. See, also, Rogan v. Taylor, 9 Cir., 136 F.2d 598, 601, 602; Dysart v. United States, 8 Cir., 95 F.2d 652, certiorari denied 305 U.S. 608, 59 S.Ct. 67, 83 L.Ed. 386; Waters v. United States, D.C., 12 F.Supp. 658.

Congress should, no doubt, have provided that the period for filing a claim for the refund of estate taxes overpaid because of the subsequent payment by an estate of contingent liabilities such as those here involved did not commence to run until the amount for which the estate was obligated upon such liabilities was determined and paid. The Government should not be allowed to retain moneys which do not belong to it, and which, in equity and good conscience, ought to be refunded.

The filing of a timely claim for refund was a procedural prerequisite to the bringing of this action. United States v. Felt & Tarrant Manufacturing Co., 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025; Guettel v. United States, 8 Cir., 95 F.2d 229, 231, 118 A.L.R. 1060, certiorari denied 305 U.S. 603, 59 S.Ct. 64, 83 L.Ed. 383. See, also, Tucker v. Alexander, 275 U.S. 228, 231, 232, 48 S.Ct. 45, 72 L.Ed. 253.

The judgment is therefore reversed, and the case is remanded with directions to enter a judgment dismissing the complaint.