**FARNSWORTH & CHAMBERS COMPANY, Inc., Appellant,**

v.

**Robert L. PHINNEY, District Director of Internal Revenue, Appellee.**

**No. 18951.**

United States Court of Appeals
Fifth Circuit.

Jan. 8, 1962.

Charles W. Hall, C. W. Wellen, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Donald Smith, Attys., Dept. of Justice, Washington, D. C., Russell B. Wine, U. S. Atty., K. Key Hoffman, Asst. U. S. Atty., San Antonio, Tex., William B. Butler, Asst. U. S. Atty., Houston, Tex., Meyer Rothwacks, Harold C. Wilkenfeld, Attys., Dept. of Justice, Washington, D. C., Ernest Morgan, U. S. Atty., San Marcos, Tex., for appellee.

Before TUTTLE, Chief Judge and HUTCHESON and RIVES, Circuit Judges.

TUTTLE, Chief Judge.

The question here for consideration is the application of the forum non conveniens statute, 28 U.S.C.A. § 1404,[1] to a mo-

---

5. Cf. National Labor Relations Board v. Clausen, 3 Cir., 188 F.2d 439, 444, certiorari denied 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 653.

1. "§ 1404. *Change of venue*
   (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

tion by the Director of Internal Revenue, the defendant in a suit for refund of internal revenue taxes, to remove the case to another district, one in which he could not be sued in the first instance but one in which the taxpayer could have sued the United States. The question brings in sharp focus once again the distinction between a suit for the recovery of taxes against the Director of Internal Revenue on the one hand, and a suit against the United States, authorized under the Tucker Act as amended, on the other.

The plaintiff below filed suit against Robert L. Phinney, District Director of Internal Revenue in the Austin Division of the United States District Court for the Western District of Texas. Under the venue statute, since this is a suit against an individual, it could be filed only in the district and division of which the defendant was a resident. Mr. Phinney was a resident of the Austin Division.

Asserting that it would greatly inure to the convenience of the Government and the witnesses and that "the interests of justice" would best be served by such transfer, the defendant filed his motion for a change of venue under the provisions of Section 1404, supra.

In support of his motion the defendant asserts, "Under section 1346(a) of Title 28 U.S.Code, the plaintiff could have sought the relief which he herein seeks by suing the United States of America, and, by virtue of Section 1402 of Title 28 U.S.Code, the venue would lie in the Southern District of Texas. Accordingly this suit might have been brought in the District Court for the Southern District of Texas, Houston Division." Over the opposition of the plaintiff, expressed in a formal reply supported by affidavits asserting that the convenience of the parties would be best served by the court's denying the motion for change of venue, the court granted the motion. The court further made the certificate necessary as a preliminary for the filing of an interlocutory appeal, (28 U.S.C.A. § 1292(b) ), and this Court granted the

right to appellant to pursue its interlocutory appeal.

Simply stated, the appellant contends that since the change of venue under the applicable statute can be made only to a district where the suit "might have been brought, the trial court was powerless to transfer to the Houston Division of the Southern District of Texas a suit which could only have been brought in the Austin Division of the Western District of Texas, citing in support of its position the Supreme Court decision of Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254.

The position of the defendant, Director of Internal Revenue, is that substantially the same cause of action *could* have been made the subject of a suit by the plaintiff taxpayer, suing the United States Government, in which event the residence of the taxpayer would control the venue; that the suit against the Director is in effect a suit against the United States, and that it, therefore, is a suit which "might have been brought" in Houston. The Government relies principally on the case of Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540. It also relies upon a previous decision of this Court, decided however without the benefit of the Supreme Court's decision in Hoffman v. Blaski, supra. This Court's previous decision was the case of Farnsworth & Chambers Co., Inc. v. Phinney, reported in 5 Cir., 279 F.2d 538. It was dated two days after the Supreme Court decided the Blaski case but was decided without reference to that opinion. It cited as its basis for decision this Court's opinion in Blaski, which was reversed by the Supreme Court.

This Court, in common with all the other courts dealing with the matter of suits for the recovery of internal revenue taxes illegally collected, has written time and again on the several remedies that are available to the taxpayer who wishes to file a suit to recover taxes which he considers to have been illegally exacted from him. Among these choices are: (1) a suit against the Director, formerly

the Collector, of Internal Revenue, in which event either party may demand a jury trial; in such case venue lies only at the legal residence of the Director; such was the suit here; (2) a suit against the United States in the Court of Claims, in which event, of course, there is no jury trial and venue is in the City of Washington, D. C.; (3) a suit against the United States under the Tucker Act, as amended, in which event a jury trial may be had, since the amendment of 1954 (28 U.S.C.A. § 2402). In such event, venue lies at the place of the principal business of the taxpayer; here, the Houston division of the Southern District of Texas, to which the case was removed.

We need not attempt to review all the arguments that have been advanced from time to time as to why the right of action against the collecting official for a refund of taxes illegally collected by him and turned into the Treasury should still be recognized as a valid subsisting right separate and distinct from the right of action against the United States, authorized under the Tucker Act. Suffice it to say that in spite of observations by the courts that a suit against the Collector (now the Director) "is to-day an anomalous relic of bygone modes of thought," George Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265, and the like, and in spite of the fact that concededly the differences between the two classes of suits have been narrowed by granting the right of trial by jury in Tucker Act tax refund suits and by eliminating the $10,000 limit on jurisdiction (Act of July 30, 1954, amending 28 U.S.C.A. § 2402), nevertheless Congress has consistently resisted the suggestion that the suit against the Director be abolished. See Walston, The Use of Juries in Federal Civil Income Tax Cases, 39 Taxes, The Tax Magazine, page 144. As an illustration of this Congressional resistance to such a proposal, it is significant that when Congress abolished the position of "Collector of Internal Revenue" and created the position of "Director," by the reorganization plans of 1950 and 1952, Congress at-

tached an amendment to the plan to make certain that this historical right of action would be continued. This amendment provided:

"Nothing in Reorganization Plan Numbered 26 of 1950 or Reorganization Plan Numbered 1 of 1952 shall be construed to impair any right or remedy, including trial by jury, to recover any internal revenue tax alleged to have been erroneously or illegally assessed or collected." P.L. 567, Sec. 3(a) (July 16, 1952), 66 Stat. 735.

When, in 1954, proposals were made to Congress that a taxpayer suing for a refund of taxes illegally exacted should be entitled to have a jury trial in the district of his residence rather than only in the district of the residence of the District Director, bills were introduced in each House of Congress to accomplish this result. The Senate version, which ultimately became the law, provided for an amendment to Section 2402 of Title 28 U.S.C.A., authorizing a jury trial in a suit against the United States. The House version, on the other hand, sought to amend the venue requirements in order to permit a taxpayer to sue a Director in the district of the residence of the plaintiff, and thus not change the otherwise fairly uniform rule that suits against the Government were not tried by juries. Each House of Congress pursued its own plan to the extent that each adopted the plan approved by its committee. The matter then went to conference, and the House conferees surrendered in favor of the Senate plan. See Mr. Walston's article, page 155. Thus, it was interesting to note that at a time when Congress could most appropriately again have either combined the two actions or have abolished the right to sue the Collector, it did neither but left both of them intact, each having the attributes which by then inhered in it. Of course, there was still, as there has been for over one hundred years, the right to sue the United States in the Court of Claims.

With this brief analysis of the several types of actions that are available to

a taxpayer in order to obtain a refund of taxes illegally collected, we must determine whether, within the meaning of the forum non conveniens statute, a suit against the Director "might have been brought" in the Houston Division of the Southern District of Texas solely because a suit against the United States to achieve the same result could have been brought there.[2]

As we said in Williams v. Patterson, 5 Cir., 289 F.2d 485,

"We simply feel compelled to recognize the distinction between actions against the United States and actions against the District Director, until Congress obliterates the distinction or the Supreme Court rules that the distinction is a fiction no longer entitled to respect. * * *"

The most striking illustration of the separateness of the two actions is that until the law was amended in 1942 to cover this specific situation, a suit against a Collector ending in a judgment against the taxpayer was not res judicata as to a suit subsequently filed on behalf of the same taxpayer against the United States for a recovery of the identical amounts. United States v. Nunnally Investment Co., 316 U.S. 258, 62 S.Ct. 1064, 86 L.Ed. 1455; United States v. Kales, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132.[3]

The following language by the Supreme Court in the Kales opinion we think is of significance as an aid to resolving the question before us:

"While the statutes have for most practical purposes reduced the personal liability of the collector to a fiction, the course of the legislation indicates clearly enough that it is a fiction intended to be acted upon to the extent that the right to maintain the suit and its incidents, until judgment rendered, are to be left undisturbed. Among its incidents [is] the right to a jury trial, which is not available in suits against the United States. 28 U.S.C. § 41(20)."

And the following:

"* * * The right to pursue the common law action against the collector is too deeply imbedded in the statutes and judicial decisions of the United States to admit of so radical a departure from its traditional use and consequences as the Government now urges, without further Congressional action." 314 U. S. 186, 200, 62 S.Ct. 214, 221.

What has been said thus far would, without question, require a holding that an action against the United States is not the same action as one against a Director of Internal Revenue within the intendment of the removal statute were it not for the Continental Grain case, supra, relied on by the appellee. We think that the Supreme Court, in holding that a removal was warranted in the Continental Grain case did not mean to change the general rule announced two weeks previously in the Blaski case, supra. It is, therefore, necessary that we consider the facts of that case. The facts there before the Court, which we think distinguish it from the present, are that following the sinking of a barge owned by Federal Barge Lines, Inc., Federal brought a civil suit in personam against Continental Grain Company, owner of the cargo, in Memphis, Tennessee, charging that the sinking was caused by improper loading by Continental; thereafter, the barge having been raised and moved to New Orleans, Continental filed a single action, including

---

2. Although we speak of it as if it could "achieve the same result," some differences in results will be later pointed out.

3. As indicated above, Congress enacted an amendment to the 1939 Code immediately following the Supreme Court's decision in the Nunnally Investment Company case which had for its purpose the prevention of future litigation of the kind held by the Court in that case to be authorized. See 26 U.S.C.A., Internal Revenue Code of 1939, Section 3772(d). Here again rather than abolish the right of action against the Collector, Congress merely sought to make the result of such action res judicata if a later suit should be filed against the United States.

a libel in rem against the barge, and a libel in personam against Federal in New Orleans. Upon motion of Federal, the trial court transferred venue of the New Orleans action to Memphis, the trial court holding that the action then pending in New Orleans "might have been brought" in Memphis. Viewing the in rem and in personam claims in the suit filed in New Orleans as "inseparable parts of one single 'civil action'" 364 U. S. at page 27, 80 S.Ct. at page 1475, the Supreme Court affirmed the order of the trial court transferring the entire proceeding to Memphis. The Supreme Court used language dealing with the fiction of using an in rem proceeding in admiralty for the purpose of bringing the owner into court, which appellee here urges is apposite to the facts of this case. In view of the consistent congressional policy, as repeatedly recognized by the Supreme Court, to continue the separate "incidents" attaching to the different causes of action, and in view of the fact that two separate and distinct parties are involved here, whereas the parties were the same in the Continental Grain case, we conclude that the Court's decision in the Continental Grain case does not lead the way to a judicial abolition of such distinctions as still remain between these two types of actions.

The appellant here points to one significant substantive right which he says flows to a plaintiff who succeeds in litigation against a Director of Internal Revenue, but which a taxpayer does not enjoy in a suit against the United States. This is his right to recover his costs of litigation. Appellee counters merely by arguing that such costs either are usually relatively unimportant or that they should not stand in the way of what he considers to be the desirable result of treating the two causes of action as being identical for the purpose of the removal statute. We can not agree that the right of a successful plaintiff to recover for costs is so unimportant as not to constitute a true distinction in the causes of action. As will be noted in our recent case of Williams v. Patterson, 5 Cir., 289 F.2d 485, the cost recovered exceeded the amount of the recovery for taxes. It is not open to serious dispute that recoverable costs in an involved suit for refund may be substantial. The fact that such costs can be recovered in the suit now pending, whereas they could not be recovered in the suit which appellee claims is sufficiently similar to warrant the Court's holding it to be the same suit, illustrates the danger inherent in the Court's attempting to abolish by judicial fiat a distinction which both Congress and the courts have thus far been unwilling to disregard between a suit against a Director of Internal Revenue and a suit against the United States.

The appellant also points out that the United States still considers suits against Directors of Internal Revenue sufficiently different from suits against the United States to warrant dismissal of those which, either because of the statute of limitations or the personal nature of the suit, give it the technical right of dismissal which would not be available to it if the suit had been brought against the Government. See Wolinsky v. United States, 2 Cir., 271 F.2d 865; Hammond-Knowlton v. United States, 2 Cir., 121 F.2d 192, cert. den. 314 U.S. 694, 62 S.Ct. 410, 86 L.Ed. 555.

We do not reach the contention made by appellant that, on the merits, assuming the power in the district court to order the transfer, such transfer was not authorized in this case because the showing as to the convenience of the parties was inadequate either because not proved on oath or because it did not rise to the dignity of substantial evidence. We conclude that since the trial court lacked the power to make the transfer, since the transfer was to a district other than one in which the suit "might have been brought," the order must be vacated and the case remanded for further proceedings.

Reversed and remanded.