**Carl W. BAUER et al.**

v.

**UNITED STATES of America.**

**Civ. A. No. 76–0233.**

United States District Court,
W. D. Louisiana,
Lafayette Division.

Feb. 28, 1978.

John A. Stassi, II, New Orleans, La., for plaintiffs.

Joseph M. Persinger, Washington, D. C., for defendant.

## MEMORANDUM OPINION

DAVIS, District Judge.

Plaintiffs filed this action for refund of income taxes allegedly overpaid for the years 1969, 1970 and 1971 in the respective amounts of $4,674.83, $3,407.79 and $4,610.49.

During the years in question, plaintiff, Carl W. Bauer, was a member of the Louisiana legislature. He established the "Carl Bauer Scholarship Fund" to provide a fund to all of the high schools in his legislative district. Each year one senior student from each high school was selected by the high school principal on the basis of need and scholastic merit to receive proceeds from plaintiff's scholarship fund. The plaintiff claims these payments as a deduction for charitable contributions.

The Government denies plaintiffs' right on the merits to collect any amounts claimed and additionally pleads prescription as to those amounts claimed in 1969 and 1970.

### THE PRESCRIPTION DEFENSE

Plaintiffs and defendant have agreed to submit the prescription issue on the following stipulated facts:

1) Plaintiffs filed timely income tax returns for the years 1969, 1970 and 1971 in which the charitable contribution deductions at issue were taken.

2) On March 27, 1972, plaintiffs filed a claim for refund for overpayment made on their 1969 and 1970 tax returns. The basis of their claim was that they erroneously failed to claim a sufficient deduction based upon an oil depletion allowance.

3) Following plaintiffs' claim for refund, the IRS conducted an audit of plaintiffs' income tax returns for the years 1969, 1970 and 1971.

4) On November 14, 1972, plaintiffs executed a form which extended the statutory period for making an assessment of taxes for the year 1969 to December 31, 1973.

5) On December 4, 1973, plaintiffs executed a consent form which extended the statutory period for making an assessment of taxes for the year 1969 to June 30, 1974.

6) On September 26, 1972, the IRS, by written notice, agreed with plaintiffs' claim for refund with respect to the additional claimed depletion allowance but disallowed the charitable contribution deductions taken in 1969, 1970 and 1971.

7) Plaintiffs protested the disallowance of the charitable contribution administratively within the IRS. The Appellate Division of the IRS upheld the disallowance of the charitable contributions deduction.

8) On January 10, 1974, the plaintiffs were mailed notices that their claim for refunds for 1969 and 1970 had been allowed with respect to the depletion allowance but disallowed with respect to the amounts claimed as charitable contributions. These notices were received by the plaintiffs on January 12 and 14, 1974.

9) By letter of December 8, 1975, the defendant notified the plaintiffs that their refund claim for 1971 was disallowed to the

extent attributable to the claimed charitable contribution deduction.

10) Suit was filed March 1, 1976.

## DISCUSSION

The legal issue presented is whether the rejection letter of January 10, 1974, triggered the running of prescription with respect to the claim for the charitable contribution deduction for 1969 and 1970.

26 U.S.C. § 6532(a)(1) provides in part: "No suit or proceeding under Section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun . . . after the expiration of two years from the date of mailing by certified mail by the Secretary or his delegate to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates."

Plaintiffs contend that in order to start the running of the two-year prescriptive period, the statute contemplates notice of disallowance of a *formal* claim and they made no formal claim for a refund of the charitable contribution deduction until April, 1975. Plaintiffs conclude that since no formal claim was made for refund of these amounts prior to the receipt of the IRS notice on January 10, 1974, the notice of rejection by the IRS did not trigger the two-year prescriptive period.

Plaintiffs contend that the claim they filed in April, 1975, was a new claim based on grounds different from the original claim for refund filed in March, 1972, which related solely to a claim for depletion allowance.

Plaintiffs rely on *Untermyer v. Bowers,* 79 F.2d 9 (2nd Cir. 1935). The facts in *Untermyer* are as follows:

In 1920, plaintiff was assessed $88,900 for taxes for the year 1919, which he paid. In 1925 plaintiff filed a claim for refund of $35,700 on 1919 taxes. In 1926, the commissioner notified plaintiff that his claim was granted to the extent of $29,497.30. In order to release this amount, the plaintiff was required to declare that he owed no taxes to the IRS. When the plaintiff refused to make such a declaration, the Commissioner applied the refund to a deficiency for 1918 taxes which was barred from collection by the statute of limitation. A second claim for refund was filed in 1928 based on the wrongful application of the refund to the barred deficiency. Suit was filed within two years after rejection of the second claim.

The Court considered whether the application by IRS of the $29,497.30 to the 1918 deficiency constituted a refusal of plaintiff's claim for refund of 1919 taxes (in which case the 1930 suit would be barred by two-year prescription) or whether prescription began to run only after rejection of the second claim filed in 1928.

The Court found that the grounds for the second claim was the subsequent action of the commissioner in applying the refund to the barred deficiency for the year 1918. This second claim had not been litigated administratively. The Court in *Untermyer* noted that the purpose of the second claim was to apprise the Treasury Department of the nature and basis of the claim in order to permit the Government to consider the claim and take a position. *See United States v. Kales,* 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941).

Unlike the facts in *Untermyer,* the claim filed by Bauer in April, 1975, was not the first time the charitable contribution issue had been considered by the Internal Revenue Service. In 1972, following a claim for refund on an oil depletion allowance, plaintiffs' tax returns were audited for the years 1969–1971. The Internal Revenue Service in September, 1972, notified plaintiffs that their charitable contribution deductions had been considered by the defendant and rejected. (Stipulation 6). Plaintiffs protested the rejection of their charitable contribution deduction administratively within the IRS. (Stipulation 7). The Appellate Division of the Internal Revenue Service upheld the disallowance and final notice of the

agency action was received by plaintiffs in January, 1974. (Exhibit A).

The second claim filed in April, 1975, was not a claim based on different grounds. Bauer was seeking a refund for the same charitable contributions deduction for 1969 and 1970 which had previously been litigated administratively through the IRS and rejected.

■ I conclude that the taxpayers' protest of the disallowance of the charitable contribution deduction and the administrative appeal of the disallowance pursued by the taxpayer constituted a claim. The IRS rejection notice of January 10, 1974, triggered the two-year prescriptive period with respect to the claim. *See Smith v. United States,* 478 F.2d 398 (5th Cir. 1973).

The claim for refund for 1969 and 1970 is therefore barred by two-year prescription.

## CHARITABLE CONTRIBUTION DEDUCTION FOR 1971

The stipulated facts relevant to a consideration of the merits of plaintiffs' claim to the 1971 charitable contribution deduction can be summarized as follows:

1) All of the high school students selected to receive scholarships provided through the Carl W. Bauer Scholarship Fund were chosen by their respective high school principals or by committees appointed by school officials.

2) Neither plaintiffs nor any one acting under their direction or control had any voice in the selection of students to receive scholarships provided through the fund.

3) All of the high schools involved were exempt organizations within the meaning of 26 U.S.C. §§ 170(c) and 501(c)(3).

4) The Carl W. Bauer Scholarship Fund was not a separate legal entity but was a personal checking account representing community property of plaintiffs.

5) Each check drawn on the Carl W. Bauer Scholarship Fund was signed by Carl Bauer and payable to a student and a college or university as joint payees.

6) All of the colleges and universities named as joint payees were exempt organizations described in 26 U.S.C. §§ 170(c) and 501(c)(3).

## DISCUSSION

Section 170 of the Internal Revenue Code provides in part that a deduction for charitable contribution is permitted where a contribution or gift is made "to or for the use of . . . a corporation, trust or community chest, fund or foundation . . . (B) organized or operated exclusively for . . . educational purposes . . ."

It is undisputed that all of the high schools and colleges or universities in question are exempt organizations within the meaning of the Internal Revenue Code. Further, the Government makes no claim that plaintiffs played any part in selecting the students who would benefit from the contributions. The Government claims that the deduction should be disallowed because the identity of the recipient of the scholarship was made known to Mr. Bauer prior to the time the funds were disbursed and the individual beneficiary was made a joint payee on plaintiffs' check, along with the exempt college or university.

■ Section 170 of the Internal Revenue Code clearly provides that a charitable contribution includes a contribution or gift made either to or *for the use of* an exempt entity. The statute, therefore, on its face does not support the argument that the payment must be made directly to the exempt entity; it suffices if the payment is "for the use of" such an entity.

In *Archbold v. United States,* 444 F.2d 1120, 195 Ct.Cl. 278 (1971), the taxpayer had donated land to the United States for public park purposes. This intended use was threatened by a highway project and the taxpayer hired and directly paid legal fees to counsel engaged by her to oppose the project. The question presented was whether the legal fees were paid "for the

use of" a qualified agency. The Court stated:

"It is, of course, well established that in order for a gift to be deductible under Section 170 it need not be made directly to a qualified donee. However, it must at least be made 'for the use of' a qualified donee.

The Government urges that 'for the use of' means 'in trust for,' and that 'the test in each case is whether the organization . . . has full control of the donated funds, and discretion as to their use, so as to insure that they will be used to carry out its functions and purposes.' . . . But the Government's position is belied by substantial authority, including the Treasury regulations themselves." 444 F.2d pp. 1122, 1123.

In *Sico Foundation v. United States,* 295 F.2d 924, 155 Ct.Cl. 554 (1961), one of the questions presented was whether the amounts paid by the taxpayer to certain colleges for use in college scholarship funds were deductible as charitable contributions. Apparently the taxpayer disbursed funds to the schools to pay tuition and related educational expenses of certain individual students selected by the schools. The IRS contended that the payments by plaintiff were in effect gifts to individual students. The Court disagreed and held:

"Although defendant contends that the scholarship awards by plaintiff were, in effect, mere gifts to individual students, the record clearly shows that the payments were made to the state teachers colleges themselves and that plaintiff had no part in the selection of any individual recipient of a scholarship." 295 F.2d 924, 930.

I am unwilling to place the ultra-technical interpretation on Section 170 of the Internal Revenue Code which is urged upon us by the Government.

Under the facts presented here, the taxpayers had no voice in the selection of the individuals who would benefit from the scholarship donations; Mr. Bauer instructed the principals of the various high schools to select a student based upon need and merit.

Any contributions which flow into a scholarship program result in benefit to both the educational institution and the individual recipients of those scholarships. No reason or authority is presented which would lead me to the conclusion that benefit by an individual scholarship recipient should defeat the deductibility of the gift; notwithstanding benefit by the individual student, the gift is nevertheless "for the use of" an exempt entity.

The taxpayers devised a very practical procedure for handling these contributions. Apparently in each instance the student endorsed the check and delivered it to the exempt institution. No claim is made that the student exercised any degree of control over the funds.

Except for the manner in which the checks were drawn, the arrangement in *Sico* appears identical to the arrangement chosen by the taxpayers in this case. The fact that the checks were made to the joint order of the student and the college or university is not inconsistent with plaintiffs' intention to further the educational purposes of the high schools and colleges in question.

■ I conclude, therefore, that plaintiffs are entitled to the claimed charitable contribution deduction taken during the taxable year 1971.

Counsel for plaintiffs is directed to submit a judgment in accordance with this opinion within 10 days.