# Indemnification of Treasury Department Officers and Employees

The Department of Treasury may use its general appropriations funds to indemnify any of its officers and employees against personal liability for conduct arising out of actions taken within the course and scope of their employment, if the Department concludes that such indemnification is necessary to ensure effective performance of the Department's mission.

28 U.S.C. § 2006 and 26 U.S.C. § 7423(2) also provide specific authority for the Department of the Treasury to indemnify, in certain circumstances, officers and employees who collect tax revenue and who enforce federal tax laws.

March 4, 1991

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF THE TREASURY

This memorandum responds to your request for our opinion whether the Department of the Treasury ("Treasury") may expend funds generally appropriated to departmental "salaries and expenses" accounts to indemnify officers and employees against personal liability for actions taken within the course and scope of their employment. We agree with your conclusion that the Department of the Treasury has the authority to indemnify its officers and employees against personal liability for such conduct if it concludes that such indemnification is necessary to ensure effective performance of the Department's mission. Letter for William P. Barr, Assistant Attorney General, Office of Legal Counsel, from Robert M. McNamara, Jr., Assistant General Counsel, Department of the Treasury, (Jan. 16, 1990).

Section 2006 of title 28, United States Code, and section 7423(2) of title 26, United States Code, specifically authorize Treasury to indemnify those officers and employees who are sued for actions taken while enforcing the Internal Revenue Code. These statutes apply equally to all Treasury employees who collect tax revenue and who enforce federal tax laws. The Department of the Treasury also has the authority to expend funds from its general operating appropriations to defray necessary departmental expenses, because the Secretary may determine, as a general matter, that effective performance of Treasury's duties requires the Department to adopt an indemnification

57

policy covering all Department personnel for actions taken during the course and scope of their employment.

I.

The Department of the Treasury currently comprises the Departmental Offices, the Treasury of the United States, the Bureau of Engraving and Printing, the Bureau of the Mint, the Federal Financing Bank, the Fiscal Service, the Office of the Comptroller of the Currency, the Customs Service, the Internal Revenue Service, the Bureau of Alcohol, Tobacco, and Firearms, and the Secret Service. The Department performs both administrative and law enforcement functions. *See* section III, *infra*.

Because Treasury performs an increasing amount of law enforcement work, the personal liability of Department personnel has become a significant concern.[1] The Supreme Court's decision in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), permits courts to award damages against a federal employee personally if, during the course and scope of employment, the employee violates an individual's constitutional rights.

This Office has previously addressed the question whether the Department of Justice may protect its employees by indemnifying them from personal liability for actions taken in the course and scope of their employment.[2] Based upon the accepted principle that an agency may use generally appropriated funds to defray expenses that are necessary or incident to the achievement of the agency's mission and the objectives underlying the appropriation, we concluded that Justice is authorized to indemnify its employees because a clear connection exists between indemnification of the agency's employees and achievement of Justice's underlying mission. *See* 10 Op. O.L.C. at 8-9.[3] Shortly thereafter, the Department of Justice issued a policy statement describing the circumstances under which it would indemnify its employees. *See* 51 Fed. Reg. 27,021 (1986); 28 C.F.R. § 50.15 (1990).

Following the Department of Justice's lead, and referencing its rationale

---

[1] When Congress enacted the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, which waived government immunity in particular cases for torts committed by federal officers and employees, the number of tort suits against individual officers and employees decreased. In some instances, the FTCA makes suits against the government the only federal remedy available after a litigant has pursued administrative actions against the employee 28 U.S.C. § 2675. Therefore, when this memorandum addresses indemnification of officers and employees for actions taken within the course and scope of employment, it necessarily excludes from coverage all of those actions for which the government is already liable under the FTCA.

[2] *Indemnification of Department of Justice Employees*, 10 Op. O.L.C. 6 (1986); Memoranda for Alice Daniel, Assistant Attorney General, Civil Division, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel (Aug. 15, 1980 and Aug. 22, 1980) ("Daniel Memoranda").

[3] The Attorney General's plenary authority to litigate or otherwise resolve cases involving the United States and its employees provides an alternative ground for our conclusion that the Department of Justice can indemnify its employees. *See* 10 Op. O.L.C. at 6-7. *See* 5 U.S.C. § 3106; 28 U.S.C. §§ 516, 519; *Settlement Authority of the United States in Oil Shale Cases*, 4B Op. O.L.C. 756 (1980). However, the primary rationale supporting our conclusion continues to be the authority of an agency to expend appropriated funds in accordance with the mission of the agency and the objectives underlying the appropriation The application of this rationale is not limited to the Department of Justice.

58

for indemnification as reflected in Justice's policy statement,[4] eleven other agencies and departments have instituted employee indemnification programs.[5] At least two more plan to activate such programs in the near future.[6]

28 U.S.C. § 2006 and 26 U.S.C. § 7423(2) provide specific authority for Treasury to indemnify those officers and employees who enforce the Internal Revenue Code. Section 2006, the narrower of these two provisions, requires Treasury to indemnify "collector[s] or other revenue officer[s]" for judgments awarded against them personally for official actions, upon court certification that probable cause existed for, or that the Secretary of the Treasury directed, the action.[7] If indemnification is warranted, Treasury must pay the judgment out of the "proper appropriation." Because any recovery would be awarded against the individual employee, the judgment fund, 31 U.S.C. § 3104(a), which is only available to meet judgments against the United States, would be unavailable.[8] Payment should be made from a Treasury appropriation.

Treasury also retains discretionary authority, under 26 U.S.C. § 7423(2), to indemnify any United States officer or employee for "[a]ll damages and costs recovered against [him] . . . in any suit brought . . . by reason of anything done in the due performance of his official duty under [the Internal Revenue Code]." Because this section was intended broadly "to exempt any Government officer or employee from liability for civil damages recovered against him in the performance of his official dut[ies] [under] . . . the internal revenue laws,"[9] it omits the prerequisites for indemnification contained

[4] 55 Fed. Reg. 4609 (1990) (Interior); 54 Fed Reg. 25,233-34 (1989) (Commodity Futures Trading Comm'n); 54 Fed. Reg. 7148 (1989) (Education); 54 Fed Reg. 5613 (1989) (Veterans Admin.); 53 Fed. Reg. 29,657 (1988) (Agency for Int'l Dev.); 53 Fed. Reg. 27,482 (1988) (Nat'l Aeronautics and Space Admin.); 53 Fed. Reg. 11,279-80 (1988) (Health and Human Services); 52 Fed. Reg. 32,533 (1987) (Small Business Admin.).

[5] 12 C.F.R. § 7.5217 (1990) (Nat'l Banks, as administered by the Comptroller of the Currency); 12 C.F.R. § 701.33 (1990) (Fed. Credit Unions); 13 C.F.R. §§ 114.110 (1990) (Small Business Admin.); 14 C.F.R. § 1261.316 (1990) (Nat'l Aeronautics and Space Admin.); 17 C.F.R. §§ 142 1-142.2 (1990) (Commodity Futures Treading Comm'n); 22 C.F.R. § 207 01 (1990) (Agency for Int'l Dev.); 32 C.F.R. §§ 516.72, 55 Fed. Reg. 10,371-72 (1990) (Army, Dep't of Defense); 34 C.F.R. §§ 60.1-60.2 (1990) (Education); 38 C.F.R. § 14.514(c) (1989) (Veterans Affairs); 43 C.F.R. § 22.6, 55 Fed. Reg. 4609 (1990) (Interior); 45 C.F.R. § 36.1 (1989) (Health and Human Services).

[6] 54 Fed. Reg. 17,549 (1989) (to be codified at 12 C.F.R. § 522.72) (Fed. Home Loan Banks); 54 Fed. Reg. 16,613 (1989) (to be codified at 10 C.F.R. § 1012) (Dep't of Energy).

[7] Congress enacted this section to combat rampant fraud against the Treasury. Act of March 3, 1863, ch. 76, sec. 12, 12 Stat. 737, 741 (1863). Prior to 1863, collectors retained disputed government revenue until a court could resolve all taxpayer protests. To encourage collectors to deposit federal revenues in the Treasury, Congress required the government to indemnify collectors against personal liability for actions taken during collections. United States v. Kales, 314 U.S. 186, 198 (1941); Moore Ice Cream Co. v. Rose, 289 U.S. 373, 380 (1933). Virtually unmodified since 1863, this section is used primarily to indemnify Customs Service employees. See Kosak v. United States, 465 U.S. 848, 860 (1984); States Marine Lines, Inc. v. Shultz, 498 F 2d 1146, 1149-51 (4th Cir. 1974)

[8] See United States v. Nunnally Inv. Co., 316 U.S. 258, 263-64 (1942), Kales, 314 U.S. at 198-99 (1941); Sage v. United States, 250 U.S. 33, 37 (1919).

[9] 56 Comp. Gen. 615, 616-17 (1977) quoting; 53 Comp. Gen. 782, 783-84 (1974); see also 40 Comp. Gen. 95, 97 (1960).

in section 2006, requiring only that personal liability result from official actions. As with section 2006, all reimbursable judgments must be rendered personally against government personnel, and should be paid from Treasury's general appropriations rather than from the judgment fund.[10] As a practical matter, more indemnification will occur under this section than under section 2006, because section 7423(2) contains less restrictive prerequisites. However, both statutes authorize indemnification of only those Treasury employees who enforce or administer the Internal Revenue Code.

## III.

Beyond this specific indemnification authority, we also conclude, in accordance with our previous opinion regarding the Department of Justice, that the Department of the Treasury has general authority to indemnify its employees because it could determine that indemnification is related both to its mission and to the objectives underlying its general appropriation. *See* 10 Op. O.L.C. 6; Daniel Memoranda.

As with the Department of Justice, Treasury may expend generally appropriated funds for indemnification only if those expenditures constitute "necessary expenses" which advance Treasury's broader statutory mission, and which fall within the spending limits set by Congress. *See* 10 Op. O.L.C. at 8-9; 31 U.S.C. § 1301(a) ("Appropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law."); *Principles of Federal Appropriations Law* 3-2 to 3-9, 3-12 (GAO 1982) (*"Principles"*). A particular expenditure satisfies these requirements if it: 1) directly accomplishes the specific congressional purpose underlying the appropriation; 2) incidentally accomplishes a specific congressional purpose; or, 3) is generally "necessary" for the realization of broader agency objectives covered by the appropriation. *Principles* at 3-12, 3-13; *See also* 68 Comp. Gen. 583, 585 (1989) ("Even though a particular expenditure may not be specifically provided for . . ., the expenditure 'is permissible if it is reasonably necessary in carrying out an authorized function or will contribute materially to the effective accomplishment of that function.'") (quoting 66 Comp. Gen. 356, 359 (1987)).[11]

Numerous precedents recognize a general nexus between an agency's

---

[10] The Comptroller General has interpreted section 7423(2) to specifically authorize the use of general appropriations. 56 Comp. Gen. at 619-20 (overruling contrary decision in 40 Comp. Gen. 95, 97 (1960)). It must be noted that, within the executive branch, decisions of the Comptroller General, an agent of Congress, are not binding, and operate only as persuasive authority. *See Bowsher v. Synar*, 478 U.S. 714, 728-32 (1986). Nevertheless, where possible, the executive branch will accord deference to the Comptroller General's opinions.

[11] Through line items in the Treasury Appropriations Act of 1991, Congress appropriated funds to defray departmental salaries and expenses. Pub. L. No. 101-509, 104 Stat. 1389 (1990). Thus, Treasury has money available in its general accounts to expend for indemnification.

mission and indemnification of that agency's personnel.[12] As early as 1838, Attorney General Butler authorized the Navy to pay a judgment rendered against a naval officer:

> The recovery was for acts done by Commodore Elliot in the performance of his official duty, and for costs occasioned by the defence made by the United States. It is therefore one of those cases in which the officer ought to be fully indemnified.

3 Op. Att'y Gen. 306 (1838).[13] Similarly, the Comptroller General advised the Department of the Interior to defray a personal judgment rendered against two game wardens who had entered private land at the direction of their superior officers:

> They were required to act in the line of duty, and they intended faithfully to carry out the law enforcement activity of the Bureau. Under these circumstances, and especially since they were directed by their superiors, the Government is obligated to compensate them. . . .
>
> . . . Accordingly, reimbursement to the claimants should be charged to the Department of the Interior appropriation available to the Bureau for necessary expenses of its law enforcement program.

*See* Comp. Gen. B-168571-O.M. at 2-3 (1970).[14]

---

[12] We agree with your conclusion that the specific indemnification statutes discussed in section II fail to support a negative inference that indemnification is unauthorized unless expressly provided for by law. Rather, these provisions address specific congressional objectives, and do not represent an affirmative congressional decision that indemnification of Department of the Treasury employees is not appropriate even if it is deemed necessary to promote the general efficiency of the Department. 28 U.S.C. § 2006 requires mandatory rather than discretionary indemnification when specified conditions are met, in order to facilitate a decision to have government rather than revenue agents control the sums collected as government revenue. *See supra* note 8, 26 U.S.C. § 7423(2) is not specifically focused on the Department of the Treasury, but permits indemnification of all tax enforcement personnel, whether or not those employees work for Treasury.

[13] *See also Tracy v. Swartwout*, 35 U.S. 80, 98-99 (1836) ("Some personal inconvenience may be experienced by an officer who shall be held responsible in damages for illegal acts done under instructions of a superior; but, as the government in such cases is bound to indemnify the officer, there can be no eventual hardship."); 53 Comp. Gen. 301, 305 (1973) ("It is well established that where an officer of the United States is sued because of some official act done in the discharge of an official duty the expense of defending the suit should be borne by the United States.").

[14] The Comptroller General has usually reached similar conclusions concerning the availability of general appropriations to pay for indemnification. *See* 10 Op. O.L.C. at 11-12. On occasion, the Comptroller General has suggested that indemnification requires specific statutory authorization. *See* 56 Comp. Gen. 615, 618 (1977); 40 Comp. Gen. 95, 97 (1960). Each of these opinions begins from the premise that:

> [T]he appropriations or funds provided for regular governmental operations or activities, out of which a cause of action arises, are not available to pay judgments of courts in the

Continued

61

Two distinct rationales are available to support your conclusion that indemnification of Treasury officials is appropiate. Treasury may conclude that its ability to attract qualified employees is threatened by applicants' fears that they risk personal financial liability for actions taken in the course of government employment. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) ("The[] social costs [of constitutional claims against government officials] include the expenses of litigation, the diversion of official energy from pressing public issues, *and the deterrence of able citizens from acceptance of public office.*") (emphasis added).

Treasury may also conclude that the willingness of its employees, once hired, to make difficult government decisions, to perform fully the functions assigned to them, and to follow orders issued by their superiors, will depend upon the extent to which the employees fear personal liability imposed in "a lawsuit arising out of the good faith performance of their jobs." 67 Comp. Gen. 37, 38 (1987). The Supreme Court has repeatedly recognized the chilling effect which the threat of litigation exerts on government employees:

> 'In exercising the functions of his office, the head of an Executive Department, keeping within the limits of his authority, should not be under an apprehension that the motives that control his official conduct may, at any time, become the subject of inquiry in a civil suit for damages. *It would seriously cripple the proper and effective administration of public affairs as entrusted to the executive branch of the government, if he were subjected to any such restraint.*'

*Barr v. Matteo*, 360 U.S. 564, 570 (1959) (emphasis added) (quoting *Spalding v. Vilas*, 161 U.S. 483, 498-99 (1896)). *See Westfall v. Erwin*, 484 U.S. 292, 295 (1988); *Harlow*, 457 U.S. at 814. *See also Anderson v. Creighton*, 483 U.S. 635, 638 (1987) ("[F]ear of personal monetary liability and harassing litigation will unduly inhibit [FBI agents] in the discharge of their duties").

In light of the potential threat posed to Treasury's law enforcement and administrative missions by the prospect of personal employee liability, Treasury may conclude that, by removing this threat, personnel indemnification facilitates Departmental objectives.[15] *See Westfall*, 484 U.S. at 295

---

[14](....continued)
absence of specific provision therefor.
56 Comp. Gen. at 618; 40 Comp. Gen. at 97. However, these statements are dicta because the Comptroller General was construing the specific indemnification provision in 26 U.S.C. § 7423, and thus did not have to consider whether indemnification of officials was justified as an expense necessary to the general efficiency of the Department.

[15] Threats of personal liability for official conduct have confronted Treasury personnel: Internal Revenue Service, *G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977), *National Commodity and Barter Ass'n v. Gibbs*, 886 F.2d 1240 (10th Cir. 1989), *Liffiton v. Keuker*, 850 F.2d 73 (2d Cir. 1988); Customs Service, *Nathanson v. United States*, 290 U.S. 41 (1933), *Seguin v. Eide*, 720 F.2d 1046 (9th Cir. 1983); Secret Service, *Peppers v. Coates*, 887 F.2d 1493 (11th Cir. 1989), *Galella v. Onassis*, 487 F.2d 986, (2d Cir. 1973) ("The protective duties assigned the [secret service] agents under [§ 3056], however, require the instant exercise of judgment which should be protected.").

("[E]ffective government will be promoted if officials are freed from the costs of vexatious and often frivolous damages suits."). Thus, Treasury's indemnification plan would qualify as a necessary departmental expense, and would satisfy the prerequisites for an expenditure of funds from Treasury's general appropriations. Treasury may use the funds in its general appropriations to indemnify all Department personnel for actions taken within the course and scope of their employment.

## IV.

There are three qualifications on this indemnification authority. First, in order to satisfy the requirements of the Anti-Deficiency Act, 31 U.S.C. § 1341(a)(1)(A), Treasury must be certain, before obligating itself to indemnify a particular employee, that unexpended funds remain available in the account which Treasury intends to use for the reimbursement.[16] Second, not every personal judgment rendered against an employee is reimbursable. Where the incident which results in liability occurs during the performance of, but not as part of, an employee's official duties, the conduct falls outside the scope of employment. The individual employee must bear any fines imposed or judgments rendered because of such conduct, and Treasury must assess each case individually to determine whether the resulting liability was incident to the accomplishment of official Treasury business. 59 Comp. Gen. 489, 493 (1980). *See also* 57 Comp. Gen. 270, 271 (1978) (traffic violations); 31 Comp. Gen. 246, 247 (1952) (double parking to make a delivery is unauthorized conduct). Finally, although no annual or permanent statutory limitations currently restrict Treasury's authority to indemnify employees, Treasury must regularly canvass new legislation to ensure that Congress has not enacted a limiting provision which might prevent Treasury from expending generally appropriated funds for indemnification.

## CONCLUSION

The Department of the Treasury has both specific and general authority to indemnify its officers and employees against personal liability imposed on them for actions taken within the course and scope of their employment. 28 U.S.C. § 2006 and 26 U.S.C. § 7423(2) provide specific indemnification authority for employees involved in income tax collection and enforcement. For all other employees, the Department may invoke its authority to expend funds from its "salaries and expenses" appropriations to defray "necessary

---

[16] The Anti-Deficiency Act prohibits employees of the United States from authorizing an "expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1)(A).

expenses" of the Department in the event that it concludes that such indemnification is necessary to prevent the threat of personal liability from interfering with the effective performance of the Department's mission.

JOHN O. MCGINNIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*