**Kenneth WEISMAN, Plaintiff,**

v.

**COMMISSIONER INTERNAL REVENUE SERVICE, Secretary of the Treasury, Defendants.**

**Civil Action No. 97–CV–5302(DGT).**

United States District Court, E.D. New York.

June 30, 2000.

622

Kenneth Weisman, Auburndale, NY, pro se.

Department of Justice, Civil Trial Section, Northern Region by Bartholomew Cirenza, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

TRAGER, District Judge.

Defendant United States, improperly sued as "Commissioner Internal Revenue Service, Secretary of the Treasury," [1] moves for dismissal of plaintiff's action under Rule 12(b) of the Federal Rules of Civil Procedure for lack of jurisdiction and/or failure to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(1) & (6). In response, plaintiff pro se Kenneth Weisman ("Weisman") has filed two affidavits in opposition to the Government's motion, thus supplementing the voluminous documentation submitted with his initial complaint and motion for a preliminary injunction.

### Background [2]

In 1989, Weisman was hired by International Fashions, Inc. ("IFI"), where he was employed until the beginning of September 1990. *See* Pl.'s Aff. Supp. Mot. Permanent Inj., Ex. 000002 (Letter from Weisman to Internal Revenue Service ("IRS") of 4/15/91) [hereinafter Perm. Inj. Mot.].[3] Weisman contends that in 1989 he filed a W–4 with IFI, claiming only two exemptions. *See id.* Weisman further alleges that his oral employment contract with IFI included an agreement that his salary would be approximately $1,000 per week, after taxes, making his gross pay approximately $1,500 per week. *See id.* Weisman is apparently unable to submit any documentary evidence to support his allegations regarding this salary arrangement, however, because he claims to have never received any pay-stubs from IFI and to have cashed his weekly paychecks at IFI's bank.[4]

While Weisman's 1989 federal and state tax withholdings were short by only $800, *see* Ex. 000122, his 1990 W–2 reflected gross income of $49,634.60, and federal income tax withheld of only $878.14, *see* Ex. 000153; *see also* Mem. Supp. Def.'s Mot. Dismiss, Ex. A [hereinafter Mem. Supp.]. Weisman's Social Security, state, and city tax withholdings for 1990 were adequate.[5] *See id.* Only the federal in-

---

**1.** The Internal Revenue Code provides that "[a] suit or proceeding [maintained in any court for the recovery of any tax or penalty] may be maintained only against the United States and not against any officer or employee of the United States ... or his personal representative." I.R.C. § 7422(f)(1). However, "[i]f a suit or proceeding ... is improperly brought solely by virtue of [I.R.C. § 7422(f)(1)], the court shall order ... that the pleadings be amended to substitute the United States as a party." I.R.C. § 7422(f)(2). Plaintiff's complaint is deemed to have been so amended.

**2.** Generally, when deciding a motion to dismiss, "a court must accept as true all material factual allegations in the complaint." *Shipping Financial Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* Instead, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists," and "a district court ...

may refer to evidence outside the pleadings." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). Accordingly, to the extent the facts stated above relate to subject matter jurisdiction, evidence outside the pleadings will be relied upon.

**3.** Documents attached as exhibits to Weisman's "Affidavit: Support of Motion for Permanent Injunction," which was filed with the complaint on September 17, 1997, will hereinafter be cited "Ex(s). # ."

**4.** On October 27, 1999, a subpoena was issued to Fleet Bank to produce copies of monthly bank statements or cancelled checks from IFI's account reflecting payments to or checks endorsed by Weisman from May 1989 to November 1990. On November 4, 1999, Fleet Bank advised that it follows a seven-year retention schedule and that the requested documents had been destroyed.

**5.** Specifically, $3,797.10 was withheld for Social Security, $2,680.46 for New York State income tax, and $1,208.90 for New York City income tax. *See* Mem. Supp., Ex. A.

come tax withholding was so notably deficient.

On April 15, 1991, Weisman sent a letter to the IRS requesting an extension of time to file his 1990 federal income tax return. *See* Exs. 000001–05. Weisman explained that he believed IFI was ultimately responsible for the unpaid income tax since, according to his oral employment agreement, IFI was supposed to be withholding the proper taxes from his paychecks each week and remitting the tax to the IRS. *See id.* at 000002. Weisman informed the IRS that he had already reported IFI to its Tax Fraud division, but he also expressed a willingness to work out a payment schedule. *See id.* Weisman also enclosed a copy of an undated letter he allegedly had sent to the president of IFI, Gunther Zissitch ("Zissitch"), requesting that Zissitch immediately send him $9,722.20 (the amount Weisman estimated was withheld from his paychecks for federal taxes but never actually sent to the IRS). *See id.* at 000004–05.

More than a year later, the IRS responded to Weisman's April 1991 letter by demanding, both in August and September of 1992, that he file his 1990 tax return. *See* Exs. 000006–08. On September 22, 1992, Weisman wrote another letter to the IRS, attaching the initial April letter, reiterating his belief that IFI had defrauded the IRS, and explaining that he was still awaiting resolution of the tax fraud complaint he filed against his former employer. *See* Exs. 000009–15. In response, the IRS sent him a copy of the W–2 issued by IFI and instructed him to complete a tax return using this information. *See* Exs. 000016–19. Weisman refused to do so on the grounds that the information in the W–2 was wrong and that he believed his employer was involved in tax fraud. *See* Exs. 000026–40.

Beginning in early 1993, Weisman was in contact with numerous Problem Resolu-

tion officers ("PROs") in the IRS's Brooklyn, New York office regarding his 1990 taxes. *See* Exs. 000041–86. In March of 1993, the IRS again instructed Weisman to file his 1990 tax return using the W–2 IFI had provided. *See* Exs. 000042–47. Instead, Weisman continued to assert that the W–2 was incorrect, and he continued to work with PROs to try to correct the mistake. *See, e.g.,* Exs. 000048–63. On June 22, 1993, while Weisman's claims were still being evaluated by various PROs, a Notice of Deficiency, seeking $11,779 in income tax due for 1990, was sent to Weisman's home address by certified mail. *See* Mem. Supp., Ex. B. Weisman did not respond to this notice and continues to maintain he never actually received it. *See* Aff. of Kenneth Weisman dated Oct. 28, 1999, ¶ 2.[6]

Throughout early 1994, Weisman's allegation that the W–2 issued by IFI was incorrect continued to be investigated by PRO Donald Mallozzi. *See* Exs. 000068–120. In March of 1994, Mallozzi sent a letter to IFI, *see* Ex. 000070, and in July, after receiving no response, recommended that the company be audited, *see* Ex. 000087. However, nothing in the record indicates that IFI was ever audited.

Additionally, Weisman sent Mallozzi "estimated" tax returns reflecting what he calculated his tax liability for 1990 would be using the figures on IFI's W–2 (Weisman owed the IRS $3,708), *see* Ex. 000074, and using the figures Weisman maintained were actually correct (Weisman was entitled to a refund of $2,270), *see* Ex. 000077. A June 15, 1994 report completed by Mallozzi and sent to Weisman reduced his tax liability to $4,586 from the $11,779 originally assessed by the IRS. *See* Exs. 000081–85. When the amended tax liability figure was reduced by $878 (the amount of income tax withholding reported on IFI's W–2), Weisman's debt to the IRS

---

**6.** The Code, however, does not require actual notice, provided the IRS has proof that the Notice of Deficiency was sent by certified mail to the taxpayer's last known address. *See* I.R.C. § 6212(a), (b)(1).

came to $3,708, plus interest and penalties. *See id.*

On July 25, 1994, Weisman submitted to Mallozzi a Form 1040 "U.S. Individual Income Tax Return—1990," he had completed using the earnings and withholding figures he believed were correct and that reflected that a refund of $2,270 was due. *See* Exs. 000095–98. Along with the Form 1040, Weisman submitted a Form 656 "Offer in Compromise," offering to settle his 1990 tax assessment for zero dollars. *See* Ex. 000091. In a cover letter, Weisman explained that he believed his offer was fair because he had promptly informed the IRS of the discrepancy in his W–2 and because he was willing to forfeit the refund he felt he was actually entitled to. *See* Ex. 000089–90. Additionally, both the cover letter and the Offer in Compromise indicated that the IRS had applied a 1993 tax refund due Weisman and his current wife against the 1990 deficiency. *See id.; see also* Ex. 000091. His Offer in Compromise was rejected by the IRS, however, because when it was considered (in October of 1994), Weisman had still not officially filed a 1990 tax return.[7]

On October 26, 1994, Weisman met with an officer in the IRS Tax Audit department to discuss his case. *See* Ex. 000134. Because his primary complaint—the inaccurate W–2—was not satisfactorily addressed during this meeting, Weisman requested that his case be transferred to an IRS Appeals Officer. *See* Ex. 000135. On April 19, 1995, Weisman finally met with an Appeals Officer, Headley Lewis ("Lewis"). *See* Ex. 000138. According to Weisman, Lewis was not familiar with the facts of Weisman's case and refused to look at the documentation Weisman had brought

with him. *See* Compl. ¶ 3c. Instead, Lewis agreed to review the IRS's administrative file and re-contact Weisman before rendering any decision. *See* Ex. 000139. Two weeks later, Weisman called Lewis to inquire about the status of his case; Lewis allegedly responded: "You are not my only case and if you do not want an automatic denial of your appeal you must wait for me to contact you." Ex. 000169; Permanent Inj. Mot. ¶ 11.

An entire year passed before Weisman heard anything more from the IRS. Then, in late April 1996, Weisman received a statutory Notice of Claim Disallowance dated April 24, 1996. *See* Ex. 000140. The caption of the letter recited the following information:

Kind of Tax: Income

Tax Period Ended: 12/31/90

Amount Claimed: $15,215.00 [8]

Amount Allowed: $5,423.00

Person to Contact: H.Lewis

Contact Telephone Number: (516)539–6249

*Id.* The body of the Notice read, in pertinent part:

> We considered your protest and the evidence and arguments in support of the above claim for refund of tax and, after making necessary adjustments, are allowing a part of the claimed amount.
>
> . . . .
>
> If you wish to bring suit or proceedings for recovery of any tax, penalties, or other moneys for which this disallowance notice is issued, *you may do so by filing such a suit with the United States District Court having jurisdiction . . . .*

---

7. The Form 1040 Weisman submitted with his Offer in Compromise was rejected by the IRS. Weisman had attempted to file the Form 1040 as a joint return and claim two exemptions (one for himself and one for his then-wife), as he had been married in 1990. *See* Ex. 000095. However, the tax return was only signed by Weisman himself, *see* Ex. 000096, as he was divorced in 1991 and had lost contact with his ex-wife, *see* Ex. 000121.

8. The "Amount Claimed" appears to have been based on the figures contained in the June 22, 1993 Notice of Deficiency in which the IRS assessed $11,779 due in income tax for the 1990 tax year and $3,436 in penalties. *See* Mem. Supp., Ex. B.

*The law permits you to do this within 2 years from the mailing of this letter.*

*See id.* (emphasis added).

Disturbed that the Appeals Office had retained his case for an entire year, during which time interest and penalties had continued to accrue, Weisman contacted the IRS Procedures Unit on May 2, 1996 to find out how long the appeals process usually takes. *See* Ex. 000142. On that date, for the first time, Weisman was told about Form 4598. *See id.; see also* Ex. 000142. Specifically, Weisman was informed that when a taxpayer fails to receive a W–2, or when a W–2 is inaccurate, a Form 4598 should be filed by the taxpayer. *See* Ex. 000143. The IRS then contacts the taxpayer's employer and sets a ten day deadline for the employer to respond to the allegations contained in the form. *See id.* If the employer does not respond, the taxpayer is permitted to submit his or her own W–2 figures, along with supporting documentation. *See id.; see also* Ex. 000252 (Memo from IRS to Weisman of 8/2/96) ("If an employer does not respond to the 4598, you may use a form 4852 as a substitute W–2 to file your taxes."); Ex. 000293 (Letter from Herbert J. Huff, IRS District Director to Weisman of 9/6/96) ("If an accurate Form W–2 is not available, Form 4852 (Substitute for W–2) may be prepared and attached to the Federal income tax return.").

On May 31, 1996 and again on June 25, 1996, Weisman sent letters detailing the history of his case, along with the newly discovered information about Form 4598, to the District Director of the IRS in Brooklyn. *See* Exs. 000181–85 (Letter of 5/31/96); Exs. 000199–208 (Letter of 6/25/96). Weisman was told that since he had already gone before the Appeals Division, there was nothing more the IRS could do; his only recourse would be to file in a lawsuit in federal district court. *See*

Exs. 000186; 000192. From June of 1996 to August of 1997, a flurry of telephone calls and letters were exchanged between Weisman and employees in Brooklyn's IRS Examinations department, with most of the interaction recounting the history of Weisman's case to date for newly involved IRS officials. *See, e.g.,* Exs. 000210–355. Weisman also wrote letters to the IRS Commissioner, *see* Exs. 000356–372, the Northeast Regional Director of Appeals, *see* Exs. 000391–93; 000398–405; 000407–11, as well as to Senators Alfonse D'Amato and Orrin Hatch, *see* Exs. 000389; 000395, complaining about the IRS's incompetent handling of his case and its failure to timely provide him with a Form 4598.

Having pursued administrative relief for six years without receiving satisfactory resolution of his claim, Weisman filed the instant suit on September 17, 1997 seeking (1) money damages from the IRS (presumably, a tax refund) in the amount of $2,500 plus interest since 1990 and (2) an injunction against the IRS preventing any further attempts to collect federal income tax for the year ending December 31, 1990. *See* Compl. ¶ 4.

### Discussion

 No suit may be brought against the United States unless it has explicitly consented, by statute, to be sued. *See United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). When a statutory waiver of immunity exists, a plaintiff must strictly comply with the conditions to suit outlined by the statute or corresponding regulation. *See Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996). Here, the United States contends that both of Weisman's causes of action fail to meet the conditions attached to the United States' consent to be sued and, thus, the suit should be dismissed.[9]

---

9. The United States also argues that Weisman's complaint should be dismissed for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). However,

> [w]here, as here, the defendant moves for dismissal under Rule 12(b)(1), [ ] as well as

**(1)**

*Claim for Injunctive Relief*

■ Section 7421(a) of the Internal Revenue Code (the "Code"),[10] commonly referred to as the "Anti–Injunction Act," prohibits lawsuits against the United States "for the purpose of restraining the assessment or collection of any tax." I.R.C. § 7421(a). The Supreme Court has recognized that the purpose of this section of the Code is to "withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 5, 82 S.Ct. 1125, 1127, 8 L.Ed.2d 292 (1962). While the Anti–Injunction Act is subject to limited exceptions,[11] none of the exceptions are applicable here. Thus, defendant's motion to dismiss plaintiff's cause of action seeking to permanently enjoin the United States from attempting to collect federal income tax for the 1990 tax year is granted.

**(2)**

*Refund Claim*

■ Federal court jurisdiction over Weisman's claim for a refund (presented in his complaint as a demand for $2,500 in money damages from the United States) depends on three elements being estab- lished: (1) that a timely refund claim was filed with the IRS by Weisman, *see* I.R.C. §§ 6511, 7422(a); (2) that Weisman filed this refund suit no more than two years after receiving a statutory Notice of Disallowance from the IRS, *see id.* § 6532(a); and (3) that "full payment" of the tax claimed as a refund has been made, *see Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958). Provided Weisman can prove that each of these elements are met here, the court has jurisdiction over his case and may award relief.

**A. Timely Refund Claim**

Regulations promulgated by the Department of the Treasury prescribe the manner in which a refund claim should be made: "In general, in the case of an overpayment of income taxes, a claim for credit or refund ... shall be made on the appropriate income tax return." 26 C.F.R. § 301.6402–3(a)(1). If a refund of individual income tax is claimed subsequent to the filing of a 1040, "a claim for refund shall be made on a Form 1040X ("Amended U.S. Individual Income Tax Return")". *Id.* § 301.6402–3(a)(2); *see also* Michael I. Saltzman, *IRS Practice and Procedure* ¶ 11.08[1] (2000). On the instant record, it is clear that Weisman has never filed a properly executed 1040 (because of his failure to obtain his ex-wife's signature, *see*

on other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." 5 C. Wright and A. Miller, *Federal Practice and Procedure*, § 1350, p. 548 (1969); *cf. Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

*United States ex rel. Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir.1993) (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n.*, 896 F.2d 674 (2d Cir.1990)).

10. All references to the Code are to the Internal Revenue Code of 1986, as amended, United States Code, Title 26.

11. The statutory exceptions to the Anti–Injunction Act include: contesting an assessed tax deficiency in Tax Court, *see* I.R.C. §§ 6212(a), (c), 6213(a); contesting withholding tax penalties assessed under I.R.C. § 6672(a), *see id.* § 6672(b); contesting tax return preparer penalties, *see id.* § 6694(c); civil actions filed by persons other than the taxpayer, *see id.* § 7426(a),(b)(1); and contesting a jeopardy assessment, *see id.* § 7429(b). *See generally* I.R.C. § 7421(a).

Additionally, the Supreme Court held in *Enochs* that an injunction suit brought by a taxpayer against the United States could proceed only when "it is apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim" and the taxpayer will suffer irreparable injury and is without an adequate remedy at law. *See Enochs*, 370 U.S. at 7, 82 S.Ct. at 1129.

*supra* n. 7) or a 1040X for the 1990 tax year. However, his failure to submit these specific forms to the IRS does not automatically preclude a finding that he satisfied the prior claim prerequisite.

### 1. *Informal Claim*

■ On the contrary, because "the function of the regulation [requiring the filing of a prior claim] is to facilitate research" of the claim by the IRS, *see* Saltzman, *supra*, ¶ 11.08[1], a taxpayer's informal request for a refund may satisfy this requirement. *See United States v. Forma*, 42 F.3d 759, 767 n. 13 (2d Cir.1994) ("The Supreme Court and lower courts have consistently held that an informal claim is sufficient to satisfy the statutory prerequisite of ... I.R.C. § 7422(a).")(internal quotation and citation omitted). In *United States v. Kales*, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941), the Supreme Court established general parameters for an informal notice of claim: (1) the claim must be in writing and (2) the writing must "fairly advis[e] the Commissioner of the nature of the taxpayer's claim." *Id.* at 194, 62 S.Ct. at 218.

More specifically, the Second Circuit has described "a satisfactory informal claim" as a writing that "at least alert[s] the IRS that the taxpayer seeks a refund and [ ] also indicate[s] the grounds upon which the taxpayer's claim is based." *Forma*, 42 F.3d at 767 n. 13. Similar formulations have been established by other federal courts. *See, e.g., Mills v. United States*, 890 F.2d 1133, 1135 (11th Cir.1989); *D'Amelio v. United States*, 679 F.2d 313, 315 (3d Cir.1982); *Szpunar–Lojasiewicz v. IRS*, 876 F.Supp. 465, 469 (W.D.N.Y.1994) ("The test [for an informal claim] is whether the IRS was fairly put on notice that the taxpayer was in fact making a claim for a refund."); *Magnone v. United States*, 733 F.Supp. 613, 618 (S.D.N.Y.1989) ("The informal claims doctrine allows certain less formal written claims to constitute notice within the statute of limitations if the claims sufficiently communicate the nature of the refund being sought.").

■ The facts of this case demonstrate that Weisman's July 25, 1994 letter to the IRS and the Form 1040 attached thereto, *see* Exs. 000093–97, contained the information required for the correspondence to be deemed an informal notice of claim. Both documents were in writing and were signed by Weisman. *See id.* Moreover, both the cover letter and the 1040 referenced the 1990 tax year and indicated that a refund was due. *See* Ex. 000093 (cover letter) ("It is my contention that not only do I not owe any taxes, but I am owed a refund."); Ex. 000094 (cover letter) ("I am offering a settlement in the amount of ZERO DOLLARS therefore relieving the IRS of its debt to me for the refund of 1990 overpaid taxes."); Ex. 000095 (Form 1040) ("For the year Jan.-Dec. 31, 1990"); Ex. 000096 (Form 1040) ("Amount of line 63 to be REFUNDED TO YOU ... $2,270.00"). Additionally, Weisman made clear in his cover letter that he was basing his claim for a refund on the fact that he believed that IFI had actually withheld $9,175 in federal income tax from his pay but had never remitted that money to the IRS. *See* Ex. 000093 ("I will not be forced to admit to owing taxes when they have already been withheld from my pay."). Accordingly, Weisman will be deemed to have filed an informal refund claim with the IRS on July 25, 1994.[12]

---

12. Some courts have held that the timely filing of an informal claim by itself is not sufficient to satisfy the statutory prerequisite of a prior claim found in I.R.C. § 7422 and that a formal claim must also eventually be filed to perfect the informal claim. *See, e.g., Mills*, 890 F.2d at 1134–35; *Gallo v. United States*, 950 F.Supp. 1246, 1249 (S.D.N.Y.1997) ("[A]n informal claim merely tolls the statute of limitations for the filing of a proper claim.") (citing *Kales*, 314 U.S. at 194, 62 S.Ct. at 218.); *Furst v. United States*, 230 Ct.Cl. 375, 678 F.2d 147, 151–53 (1982). However, by fully investigating the merits of an nonconforming claim, the IRS can waive its right to perfection of an informal refund

### 2. *Timeliness*

It is not enough, however, for a taxpayer to have simply filed a refund claim; the claim must have been *timely* filed. In order to be timely, a claim for refund must be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid, ... or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." I.R.C. § 6511(a). Weisman never officially filed a 1990 income tax return. Therefore, in order for his refund claim to be timely, Weisman must have filed his refund claim no more than two years after paying his tax.

The facts here make it clear that Weisman never remitted any money to the IRS in full or partial satisfaction of his alleged 1990 income tax deficit. However, his July 25, 1994 Offer in Compromise and cover letter, *see* Exs. 000091–94, made reference to a 1993 tax refund that was withheld by the IRS and applied against Weisman's 1990 deficiency. *See* Ex. 000091 (Offer in Compromise) ("[P]ayment was taken from my 1993 tax refund in the amount of $2,727.00."); Ex. 000094 ("Please be advised that the IRS has taken the 1993 tax

claim, just as it can waive its right to strict compliance with other tax procedure regulations. *See Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 297, 65 S.Ct. 1162, 1164–65, 89 L.Ed. 1619 (1945):

> If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it.

*See also Kales*, 314 U.S. at 196–97, 62 S.Ct. at 219 ("[W]e think [the IRS treating a letter like a claim for refund] was a waiver of the requirements of the regulations as to the formality and particularity with which the ground for refund are to be stated."); *Zeeman v. United States*, 395 F.2d 861, 868–69 (2d Cir.1968) ("[T]he Commissioner waives his right to insist upon compliance with IRS procedures .... [w]hen, for example, [he] has investigated the merits of a timely claim, despite its technical defects...."); *Dale Distrib. Co. v. C.I.R.*, 269 F.2d 444, 448 (2d Cir.1959) (the Commissioner waived his right to object

refund against the balance you currently show as due for 1990."). Thus, the question becomes whether the IRS's application of Weisman's 1993 tax refund to his 1990 tax liability is a "payment" for the purpose of a refund claim.

Under § 7422(d) of the Code:

> [t]he credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed.

I.R.C. § 7422(d). In cases where tax refunds have been credited by the IRS in total or partial satisfaction of an outstanding tax debt, courts have applied this statute, designated the credits "payments" for refund claim purposes, and begun the two year limitations period within which a claim for refund must be filed from the date of the credit. *See, e.g., Fitzmaurice v. United States*, 81 F.Supp.2d 741 (S.D.Tex.1999) (credit fully satisfied deficit); *Culpepper–Smith v. United States*, No. 96–CV5855, 1998 WL 544964, at *7, *7

to the form of a timely claim when "[d]espite the informality ..., the Commissioner by his agents, made a complete investigation of the [years in question] and ascertained that the taxpayer was entitled to a credit ...."); *cf. Quarty v. United States*, 170 F.3d 961, 972–73 (9th Cir.1999) (IRS may waive the specificity requirement of 26 C.F.R. § 301.6402–2(b)(1) by investigating the merits of and taking action on a claim); *Goulding v. United States*, 929 F.2d 329, 332–33 (7th Cir.1991) (same).

In light of these precedents, the informal notice of claim filed by Weisman in July of 1994 was sufficient to satisfy the requirements of I.R.C. § 7422, and any regulatory formality the claim did not conform to was waived by the IRS through its investigation of the merits of Weisman's refund claim. Furthermore, the Notice of Disallowance issued by the IRS in response to Weisman's informal claim for a refund did not raise any perfection or timeliness issues. *See* Ex. 000140. Instead, the Notice specifically informed Weisman that his only remaining remedy was filing a suit in federal district court within two years of the date of that notice, a requirement with which Weisman complied. *See id.*

n. 6, 1998 U.S. Dist. LEXIS 13220, at *15–16, *19 n. 6 (E.D.Pa.1998) (credit partially satisfied deficit); *Donahue v. United States*, 33 Fed. Cl. 600, 605 (Fed.Cl.1995) (credit fully satisfied deficit); *Simmons v. United States*, 29 Fed. Cl. 136, 141 (Fed. Cl.1993) (credit partially satisfied deficit); *Fulton v. United States*, No. R–90–2028, 1991 U.S. Dist. LEXIS 9196, at *3 (D.Md. 1991) (same); *cf. Lewyt v. Commissioner*, 215 F.2d 518, 522 (2d Cir.1954) ("A remittance made in respect of an asserted or putative tax liability in no proper sense constitutes a tax 'payment' except to the extent that it is effective to discharge such liability in whole or in part."). Accordingly, Weisman's informal claim is timely, provided the IRS did in fact reduce his 1990 tax liability by crediting another year's refund on or after July 25, 1992 (i.e., two years before the filing of the refund claim).

■ The only evidence currently before the court which addresses the application of Weisman's 1993 tax refund to his 1990 tax liability are references made by Weisman in his July 25, 1994 letter to the IRS and in the attached Offer to Compromise. *See* Exs. 000091, 000094. These two references alone are insufficient to substantiate a finding that Weisman's informal refund claim was timely filed. Moreover, in addition to the specific date of the credit, the total amount credited to the tax deficiency from July 25, 1992 through July 25, 1994 must be established, because the amount Weisman can recover on the instant facts is limited to that amount "of the tax paid during the 2 years immediately preceding the filing of the claim." I.R.C. § 6511(b)(2)(B). Therefore, decision on the timeliness of Weisman's informal refund claim and the amount of refund he may be entitled to must be reserved, pending the development of further evidence on these issues.

### B. *Timely Refund Suit*

The fact that Weisman has satisfied the second requirement necessary for adjudi-cation of his suit against the IRS is indisputable. Section 6532(a) of the Code requires that a suit "for the recovery of any internal revenue tax" brought under 7422(a) be filed no more than two years from the mailing of the Notice of Disallowance. I.R.C. § 6532(a)(1). Here, Weisman's Notice of Disallowance was dated April 24, 1996, and he filed the instant suit on September 17, 1997. Even assuming that the Notice of Disallowance was mailed the very same day it was dated, it is clear that Weisman filed his refund suit well within the statutory period of limitation.

### C. *"Full Payment"*

■ In order to award appropriate relief in this case, it is not enough to find that Weisman filed a timely refund claim with the IRS and filed a timely refund suit in federal court. Weisman must also prove that he fully paid his 1990 tax liability prior to making his claim for a refund. *See Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958). Beginning with his very first letter to the IRS on April 15, 1991 and continuing throughout nine years of administrative and judicial review, Weisman has unwaveringly maintained that IFI actually withheld federal income tax for 1990 from his salary but never remitted that withholding to the IRS. If Weisman is able to establish this assertion factually, then, as a matter of law, the deduction and withholding of income tax from his salary will have satisfied the "full payment" standard set by the Supreme Court in *Flora*, even if IFI unlawfully failed to pay the withholding over to the IRS.

Although no case directly on point was found, the Code contains language that is instructive here. Specifically, § 6513(b), which addresses the time at which a tax is considered paid, provides:

> For purposes of section 6511 or 6512—
> (1) Any tax *actually deducted and withheld* at the source during any calendar year under chapter 24 shall, in respect of the recipient of the income, *be deemed*

to have been paid by him on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31.

I.R.C. § 6513(b)(1) (emphasis added).[13] The plain language of this statute requires only that the income tax be "actually deducted and withheld at the source" in order for a taxpayer to be deemed to have paid that tax. *Id.* Similarly, § 31 of the Code, which is referred to in § 6513(b)(1), provides that the amount of money "*withheld as tax*" in a given taxable year shall be applied as a credit against the taxpayer's yearly liability. I.R.C. § 31(a)(1), (2) (emphasis added). Moreover, Treasury Regulation § 1.31–1(a) specifically provides: "*If the tax has actually been withheld at the source,* credit or refund shall be made to the recipient of the income *even though such tax has not been paid over to the Government by the employer.*" 26 C.F.R. § 1.31–1(a) (emphasis added). All of these provisions credit a taxpayer the total amount of tax withheld from his or her salary by the employer, and neither conditions the credit on whether the employer actually remits the funds to the IRS. It follows, therefore, that income tax withheld in a given taxable year should sufficiently satisfy *Flora*'s "full payment" requirement.

Moreover, this construction does not prejudice the rights of the IRS in any way. In fact, the Code itself places the burden of tax remittance on the withholding agent, *see* I.R.C. §§ 6672; 7512, and, if the agent fails to adequately bear its burden, the IRS has remedies at its disposal to ensure collection of the withheld tax from the agent, *see* I.R.C. §§ 7202 (criminal penalties for willful failure to collect or pay over tax), 7204 (criminal penalties for willfully furnishing a false or fraudulent statements to the IRS). In light of the IRS's ability to monitor and punish a withholding agent

for its illegal retention of withholding payments, it is unnecessary and unjust to hold an innocent taxpayer responsible for such illegal acts by preventing the adjudication of a refund claim.

■■ However, in order to find that Weisman made "full payment" of his 1990 income tax under this statutory construction, he must prove that IFI actually withheld more than the $878 reflected on his 1990 W–2. Due to a combination of factors discussed above—including IFI's questionable business practices, the extraordinary length of time it took the IRS to investigate Weisman's claims, the IRS's failure to audit IFI, its negligence in not informing Weisman of Form 4598 in a timely manner, and the absence of any of Weisman's personal financial records, *see supra* at p. 623. Weisman has not produced any documentary evidence with which he can satisfy his burden of proof on this issue. Nevertheless, certain facts that Weisman has consistently alleged throughout his nearly decade-long dispute with the IRS, give pause and warrant further discovery.

For example, during the course of the instant case, the attorney for the United States contacted Zissitch, one of IFI's principals, and had a telephone conversation with him that seems to have raised more questions than answers. *See* Letter from Counsel for the Defendant to Chambers of 3/31/2000 at 3 n. 1. According to the United States, Zissitch denied making a net salary agreement with Weisman. *See id.* Instead, Zissitch claimed that Weisman specifically requested not to have federal income tax withheld from his salary in 1990 because he was going through a divorce and needed extra money. *See id.* This claim appears to be consistent with the figures reflected on Weisman's W–2. *See* Ex. 000053. However, if Zissitch had consented to Weisman's request, agreeing to withhold almost no federal income tax for 1990, Weisman would have had to increase the exemptions claimed on his W–4,

---

**13.** As discussed above, § 6511 contains the applicable limitation periods for a refund claim, while § 6512 outlines the limitation periods for contesting an assessment of deficiency in Tax Court. *See* I.R.C. §§ 6511, 6512.

and Zissitch would have had to file that W–4 with the IRS to alert it that Weisman was claiming such a large number of exemptions. *See* Internal Revenue Service, U.S. Dept. of Treasury, Pub. No. 15, Circular E, Employer's Tax Guide 14 (2000) (requiring employer to send the IRS a copy of employee's W–4 if more than ten withholding allowances are claimed). No such form appears on the record.

Additionally, in light of the fact that it appears IFI went bankrupt shortly after Weisman stopped working there, IFI's conduct, as alleged by Weisman, would conform with the conduct of a small business owner in financial trouble and putting Uncle Sam last in the line of creditors. The IRS did not investigate this logical, alternative explanation of why Weisman's federal income tax withholding was so low, even though Weisman clearly and continuously accused his ex-employer of tax fraud and even though the IRS had ample opportunity to do so. Weisman's unwavering diligence in pressing this claim and the inherent plausibility of his allegations warrant further factual exploration. Accordingly, decision on the United States's motion to dismiss under Rule 12(b)(1) will be reserved pending the development of further evidence.

### Conclusion

For the foregoing reasons, the United States' motion to dismiss plaintiff's injunction claim is granted. However, the court reserves decision on the dismissal of plaintiff's refund claim pending further discovery on the following two issues:

(1) the total amount of tax refunds credited against Weisman's assessed 1990 tax deficiency and the dates those credits were applied; and

(2) the total amount of federal income tax withheld from Weisman's wages by IFI in the 1990 tax year.

SO ORDERED.