T.C. Memo. 2002-78


UNITED STATES TAX COURT


LARRY J. SUMRALL AND PATRICIA A. SUMRALL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11058-97.          Filed March 28, 2002.


        <u>Held</u>:  Petitioners did not make informal claims
for refund entitling them to refunds attributable to
NOL carrybacks from 1992 to 1989 and 1990.


<u>Steven A. Wilson</u>, for petitioners.

<u>Mark H. Howard</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  By notices of deficiency dated February 24, 1997, respondent determined deficiencies in, additions to, and penalties with respect to petitioners' Federal income taxes for their taxable (calendar) years 1987 through 1991 (the audit years), as follows:

| | | Additions to Tax and Penalties | | |
| | | Sec. | Sec. | Sec. |
| Year | Deficiency | 6654 | 6653(b)(1) | 6663 |
| 1987 | $46,346 | $2,587 | [1]$36,140 | -- |
| 1988 | 59,016 | 4,593 | 53,558 | -- |
| 1989 | 12,444 | 1,535 | -- | $9,333 |
| 1990 | 67,887 | 5,393 | -- | 50,915 |
| 1991 | 9,371 | 1,104 | -- | 7,028 |

[1] Plus 50% of the interest due on underpayment of $48,187 due to fraud.  Sec. 6653(b)(1)(B).

Because of the complicated procedural history of this case, we set forth in some detail the disposition of various issues that the parties, themselves, have agreed to or disposed of.  By motion for leave to file amended answer, respondent informed the Court that he had determined not to pursue the penalties determined under sections 6653(b)(1) and 6663, for fraud.  We interpret that as a concession, and we accept it.  By the amended answer to amended petition, respondent admits that there are no deficiencies in tax for 1989, 1990, and 1991, and, for 1987 and 1988, he claims additions to tax for delinquency under section 6651 and for negligence under section 6653(a).  By a stipulation of settled issues, petitioners concede the claimed addition to

tax for failure to file a return under section 6651(a)(1) for 1987. On brief, respondent concedes the claimed addition to tax for failure to pay under section 6651(a)(2) for 1987. At trial, petitioners conceded the claimed additions to tax for 1988 for both delinquency under section 6651 and negligence under section 6653. At trial, the parties stipulated that there are no additions to tax under section 6654. On brief, with respect to the deficiencies in tax for 1987 and 1988, petitioners propose that we find that, but for certain claimed credits and refunds still in issue, there are deficiencies in tax of $9,232 and $40,329 for those years, respectively. Respondent agrees with those proposed findings of fact, and we shall treat such agreements as constituting a stipulation of settlement with respect to those deficiencies, which we accept. The parties agree that petitioners have raised as issues in this case overpayments on account of (1) withholding and refundable credits for 1989, 1990, and 1991, and (2) net operating loss (NOL) carrybacks from 1991 and 1992. At trial, petitioners conceded that there was no timely claim for any overpayment on account of withholding and refundable credits for 1991. On brief, respondent concedes that petitioners submitted timely refund claims for overpayments for 1989 and 1990 (except with respect to NOL carrybacks), and states that the necessary computations to satisfy those claims can be made under Rule 155. We accept the

parties' various concessions and leave the computations to be disposed of pursuant to Rule 155. The parties have stipulated that petitioners are entitled to the following carryback deductions on account of NOLs if they can establish that they made timely claims for credit or refund (without distinction, refund) of overpayments in tax attributable to those deductions:

| Loss Year | Carryback Year | Carryback Deduction |
|-----------|----------------|---------------------|
| 1991 | 1988 | $14,113 |
| 1992 | 1989 | 31,113 |
| 1992 | 1990 | 12,810 |

On brief, respondent concedes that petitioners made a timely claim for a refund attributable to an NOL carryback to 1988 from 1991. We accept that concession. The only issue remaining for decision is whether petitioners made timely claims for refunds attributable to NOL carrybacks to 1989 and 1990 from 1992.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts have been rounded to the nearest dollar.

Petitioners bear the burden of proof. Rule 142(a).

### FINDINGS OF FACT

Some facts have been stipulated and are so found. The stipulations of fact, with attached exhibits, are incorporated herein by this reference.

Residence

At the time of the petition, petitioners resided in Reno, Nevada.

Returns

Petitioners did not timely file Federal income tax returns for any of the audit years (1987 through 1991) or for 1992 and 1993.

In early 1993, the Internal Revenue Service (IRS) initiated a criminal tax investigation (the criminal investigation) of petitioner husband (petitioner), with respect to the audit years.

On July 13, 1993, petitioners filed their Federal income tax returns with respondent for the audit years. Those returns show tax liabilities as follows:

| Year | Liability |
|------|-----------|
| 1987 | $1,841 |
| 1988 | 12,395 |
| 1989 | 10,251 |
| 1990 | 14,487 |
| 1991 | 9,942 |

Petitioners requested an extension of time to file their Federal income tax return for 1992. Respondent approved the request and extended the due date for the 1992 return to October 15, 1993. Petitioners made a joint return of Federal income tax for 1992 by filing a Form 1040, U.S. Individual Income Tax Return (the 1992 return), with the Internal Revenue Service Center in Ogden, Utah (the Ogden Service Center), on October 7, 1996. Among the attachments to the 1992 return is a single page,

"Page 2", of Form 1045, Application for Tentative Refund (the Form 1045 page 2). The Form 1045 page 2 is preprinted with a schedule (Schedule A) on which (pursuant to instructions) is to be computed an NOL. On the Form 1045 page 2, petitioners computed an NOL of $13,336.

Petitioners filed their joint Federal income tax return for 1993 (the 1993 return) on October 7, 1996.

Dale K. Barker, Jr.

Dale K. Barker, Jr., is a certified public accountant, who was retained by petitioners in March 1993. Mr. Barker was retained, among other reasons, to prepare returns for the audit years. Mr. Barker prepared those returns. He also prepared the 1992 and 1993 returns.

The Criminal Investigation

Rick Raven is employed by the IRS as a Special Agent. His duties include the conduct of criminal investigations. In January 1993, Special Agent Raven began the criminal investigation. He was assisted in the criminal investigation by Dick Stufflebeam, a Revenue Agent employed by the IRS. Special Agent Raven collected information concerning petitioner's income and expenses for the audit years. He was not concerned with whether any of petitioner's tax liabilities for any of the years under investigation could be reduced on account of NOL carrybacks, since he believed that NOL carrybacks were not a

defense to a criminal charge. As part of his investigation, Revenue Agent Raven did not concern himself with petitioner's tax liability for 1992, since, as of the start of the criminal investigation, no return for 1992 had yet become due.

During his investigation, Special Agent Raven interviewed Mr. Barker on one or more occasions, accompanied on at least one occasion by Mr. Stufflebeam. During the course of those interviews, there was no discussion of NOLs.

By letter dated February 14, 1996 (the February 14 letter), Mr. Barker provided certain information to Donald C. Hill, criminal tax counsel for petitioner. Shortly after he received the February 14 letter, Mr. Hill provided a copy to the U.S. Attorney and employees of the IRS. The February 14 letter contains no claim for any refund, overpayment, or NOL carryback. It does state: "We may have some timing errors [in, according to petitioner, "the returns for 1988 through 1990"] yet the tax returns should be materially correct".

As a result of his investigation, Special Agent Raven recommended the prosecution of petitioner for crimes connected with his 1988, 1989, and 1990 income tax liabilities. On November 6, 1995, petitioner signed a plea agreement, agreeing to plead guilty to one count of willfully failing to file an income tax return for 1988, in violation of section 7203. Judgment was entered on March 12, 1996.

The Civil Investigation

At the conclusion of the criminal investigation, Revenue Agent Stufflebeam became responsible for resolving petitioners' civil tax liabilities for the audit years.  In the process of resolving those liabilities he received both written and oral communications from Mr. Barker.  Mr. Barker did not file with him any claim for an NOL carryback from 1992.

By a letter dated May 1, 1996 (the May 1 letter), sent by Mr. Barker to the Ogden Service Center, Mr. Barker advised the IRS that he was preparing income tax returns for petitioners for their 1991 through 1994 tax years, but that those returns were "on hold to await the outcome of settlement with the Internal Revenue Service out of the Reno area."  He states:  "To finalize these years there was required a settlement on the exact inventory, and other critical capitalized amounts to present an accurate return."

On June 18, 1996, Revenue Agent Stufflebeam memorialized in handwritten notes (the June 18 notes) a phone conversation that had taken place that day between himself and Mr. Barker.  As memorialized in the June 18 notes:  Mr. Barker stated that, based on the cost of goods sold used in the criminal case against petitioner, petitioners would have NOL carrybacks in later years. Revenue Agent Stufflebeam told Mr. Barker that he could complete

the audit in 60 to 90 days if he could get certain additional requested documents and the returns for the later years.

During the course of Mr. Stufflebeam's civil examination of the audit years, he did not also examine the 1992 return. He did not receive a copy of it from the Ogden Service Center when, on October 7, 1996, it was filed there, nor was he provided a copy of it by petitioner or Mr. Barker.

## OPINION

### I. Introduction

We must determine whether petitioners made timely claims for refunds attributable to net operating loss (NOL) carrybacks from 1992 to 1989 and 1990. If they did, then the parties are in agreement that the amounts of such carrybacks are $31,113 and $12,810 to 1989 and 1990, respectively.

### II. Code and Regulations

Section 172(a) allows an NOL deduction for a taxable year equal to the aggregate of the NOL carryovers and carrybacks to that year. Every taxpayer claiming an NOL deduction for any taxable year must file with his return for such year a statement computing the amount of the NOL deduction claimed and setting forth certain pertinent information. Sec. 1.172-1(c), Income Tax Regs. If the taxpayer is entitled in computing his NOL deduction to a carryback that he is not able to ascertain at the time he files his return, he must compute his NOL deduction without

regard to such carryback.  See sec. 1.172-1(d), Income Tax Regs.

When the taxpayer ascertains the NOL carryback, he may within the

applicable period of limitations file a claim for refund of the

overpayment, if any, resulting from the failure originally to

compute the NOL deduction for the taxable year with the inclusion

of the carryback.  Id.

Section 301.6402-2(b)(1), Proced. & Admin Regs., sets forth

the following general requirements concerning the contents of a

claim for refund:

> (b) Grounds set forth in claim.  (1) No refund or
> credit will be allowed after the expiration of the
> statutory period of limitation applicable to the filing
> of a claim therefor except upon one or more of the
> grounds set forth in a claim filed before the
> expiration of such period.  The claim must set forth in
> detail each ground upon which a credit or refund is
> claimed and facts sufficient to apprise the
> Commissioner of the exact basis thereof.  * * *

An individual makes a claim for refund of an overpayment of

income taxes for a taxable year on a Form 1040X, Amended U.S.

Individual Income Tax Return (Form 1040X).  See sec. 301.6402-

3(a)(2), Proced. & Admin. Regs.  Alternatively, the taxpayer may

file an application under the provisions of section 6411 for a

tentative carryback adjustment attributable to an NOL.  Sec.

1.172-1(d), Income Tax Regs.  A tentative carryback adjustment

can result in a refund's being paid within 90 days.  Sec.

6411(b).

An individual makes application for a tentative carryback adjustment by filing Form 1045, Application for Tentative Refund (Form 1045). Sec. 1.6411-1(b)(1), Income Tax Regs. As pertinent to this case, section 6411(a) provides that an application for a tentative carryback adjustment does not constitute a claim for refund.

Section 6511(d)(2) provides the applicable period of limitations to file a claim for refund of the overpayment attributable to a NOL carryback. As pertinent to the facts before us, such period ends 3 years after the due date (including extensions) for filing the return for the taxable year (here, 1992) of the NOL. See sec. 6511(d)(2)(A).[1]

III. Discussion

A. Introduction

Petitioners requested, and were granted, an extension of time to file their Federal income tax return for 1992 until October 15, 1993. Because of such extension, they had until October 15, 1996, to file claims for refunds attributable to NOL carrybacks from 1992 to 1989 and 1990. Petitioners did not

---

[1] Petitioners acknowledge that the time has passed for them to avail themselves of a tentative carryback adjustment. Application for such adjustment must be made on or after the date of filing the tax return for the year of the NOL but no later than 12 months from the end of such year. Sec. 6411(a); sec. 1.6411-1(c), Income Tax Regs. The 1992 Form 1040, with the Form 1045 page 2 attached, was filed on Oct. 7, 1996, well past the end of 1992.

comply with sec. 301.6402-3(a)(2), Proced. & Admin. Regs., and make such claims by filing Forms 1040X for 1989 and 1990. Nevertheless, petitioners claim that they filed "timely, valid[,] informal claims" to carry back their 1992 NOL to 1989 and 1990: "Petitioners informal claims for * * * 1992 consist of oral and written communications with Respondent, which placed Respondent on notice that Petitioners were claiming net operating losses in * * * 1992." Respondent answers that petitioners' oral and written communications did not constitute adequate notice that petitioners were requesting refunds and, thus, do not constitute informal claims for refund.

B. Discussion

1. Informal Claims

It is well established that an informal claim for refund (i.e., one that does not comply with the formal requirements of the statute and regulations) will suffice as long as it requests a refund and fairly advises respondent of the nature of the taxpayer's claim. United States v. Kales, 314 U.S. 186, 194 (1941). As we summarized in Turco v. Commissioner, T.C. Memo. 1997-564: There are no bright line rules as to what constitutes an informal claim. Rather, each case must be decided on its own particular set of facts. The relevant question is whether respondent knew or should have known that a refund claim was being made. Also, an informal claim must have some written

component.  E.g., <u>Hollie v. Commissioner</u>, 73 T.C. 1198, 1212 (1980); <u>Jackson v. Commissioner</u>, T.C. Memo. 2002-44.

### 2.  Petitioners's Argument

Petitioners ask us to assemble the following pieces into informal claims for refund for 1989 and 1990:  The Form 1045 page 2, attached to the 1992 return (filed October 7, 1996), Mr. Barker's June 18, 1996, telephone conversation with Revenue Agent Stufflebeam (the June 18 conversation), memorialized in the June 18 notes, and the provisions of section 172(b), specifying the years to which an NOL is to be carried.  Taken separately, or together, however, such pieces do not constitute informal claims for refund.

### 3.  The Form 1045 Page 2

The instructions accompanying Form 1045 provide that it is to be used by an individual to apply for a quick refund resulting from an NOL carryback.  The instructions state that the application is not treated as a claim for credit or refund, which claim, by an individual, is to be made by filing a Form 1040X. The instructions further state that the form is to be filed with the Internal Revenue Service Center for the place where the taxpayer lives.  The instructions warn:  "<u>Caution!</u>  <u>Do not</u> mail Form 1045 with your * * * [year] income tax return."

In <u>New England Elec. Sys. v. United States</u>, 32 Fed. Cl. 636, 641 (1995), the U.S. Court of Federal Claims stated that, in

addition to a written component, an informal claim must have two additional components: "First, an informal claim must provide the Commissioner of the IRS with notice that the taxpayer is asserting a right to a refund. Second, the claim must describe the legal and factual basis for the refund."

At best, the Form 1045 page 2 informs the Commissioner of the possibility that petitioners have one or more claims for refund (which possibility arises by operation of law if a taxpayer has an NOL). See sec. 172(b)(1). The form does not, however, assert the right to any refund, nor does it provide the legal and factual basis for any refund, since it fails to specify any refund year or the particulars in any refund year that would entitle petitioners to a refund. By itself, the Form 1045 page 2 does not constitute an informal claim for refund, since it lacks one or more of the components of an informal claim for refund.[2]

### 4. The June 18 Conversation

Nor do we believe that the Form 1045 page 2 perfected an informal claim initiated by Mr. Barker during the June 18 conversation. Respondent proposes a finding with respect to the June 18 conversation. Petitioners have no objection to that

---

[2] Indeed, courts have held that the full Form 1045 does not constitute an informal claim for refund, since it is insufficient to put the Service on notice that a claim for refund is being made. E.g., Kirsh v. United States, 131 F. Supp. 2d 389, 392 (S.D.N.Y. 2000); Kamens v. United States, 50 AFTR 2d 82-5567, 82-2 USTC par. 9540(W.D. Mo. 1982).

finding, and we think it fairly reflects the testimony of Revenue
Agent Stufflebeam and Mr. Barker.  The proposed finding is:

> Mr. Barker said that based on the cost of goods sold
> used in the criminal case for Mr. Sumrall, the
> petitioners would have net operating loss carrybacks in
> later years.  Mr. Stufflebeam told Mr. Barker that he
> could complete the audit in 60 to 90 days if he could
> get the additional requested documents and the returns
> for later years.

Put simply, we think that Mr. Barker told Revenue Agent
Stufflebeam that, based on information gathered during the
criminal investigation, petitioners expected to report losses for
subsequent years that would carry back and reduce petitioners'
income for one or more of the audit years.  Petitioners may,
thus, have asserted a right to a refund.  Nevertheless, Revenue
Agent Stufflebeam was examining petitioners' returns for 1987
through 1991, petitioners had not yet filed their returns for
1992 and 1993 (or any amended returns for any year under
examination), and Revenue Agent Stufflebeam told Mr. Barker that
he would consider any carrybacks resulting from losses when he
received returns showing such losses.

To make an informal claim for refund, a taxpayer not only
must assert his right to a refund for a year, but he must
describe the legal and factual basis of the claim.  New England
Elec. Sys. v. United States, supra.  Petitioners have not shown
that they adequately described the factual basis of their claim
to Revenue Agent Stufflebeam.  Revenue Agent Stufflebeam

undoubtedly had knowledge of the years under examination, but petitioners did not tell him that the subsequent year from which a loss would carry back was 1992, or identify the year or years, among those under examination to which the loss would be carried back, or, more importantly, give him any particulars of that loss other than that it was expected to be based on the cost of goods sold used in the criminal case against petitioner. To constitute a claim for refund, a taxpayer must give the Commissioner adequate notice of the grounds, including the factual basis, for the claim before the expiration of the period of limitations so that the Commissioner can, if he wishes, initiate an examination of the bona fides of the claim. See Estate of Mueller v. Commissioner, 107 T.C. 189, 213 (Beghe, J., dissenting), affd. 153 F.3d 302 (6th Cir. 1998); see also Am. Radiator & Standard Sanitary Corp. v. United States, 162 Ct. Cl. 106, 318 F.2d 915, 920 (1963).[3] Petitioners did not, through the June 18 conversation, give respondent adequate notice that they had claims for refund or of the grounds underlying such claims.

_____

[3] The facts of this are distinguishable from those of Am. Radiator & Standard Sanitary Corp. v. United States, 162 Ct. Cl. 106, 318 F.2d 915, 921 (1963), in which the Court of Claims found an informal claim for refund with respect to retroactive inventory adjustments where the revenue agent had knowledge of the taxpayer's desire for a refund, the approximate total amount of the refund expected, and the cost of the later year inventory replacement giving rise to the earlier year adjustments and refunds. The equivalent of that last component is missing in this case.

### 5. Revenue Agent Stufflebeam's Request

Revenue Agent Stufflebeam asked for a copy of any loss year return. Petitioners did not, however, give him a copy of the 1992 return, nor did he receive one from the Ogden Service Center, where the original was filed on October 7, 1996.

Petitioners have not persuaded us that it was Revenue Agent Stufflebeam's duty to put someone on lookout for the 1992 return at the Ogden Service Center or that it was someone's duty at the service center to separate the Form 1045 page 2 from the 1992 return and forward it to the revenue agent. In Kidde Indus., Inc. v. United States, 40 Fed. Cl. 42, 65-66 (1997), the U.S. Court of Federal Claims found that it was not necessary for a taxpayer to direct the information that constitutes an informal claim to the precise IRS official who will consider that claim so long as it is given to an official whose general responsibilities and interactions with the taxpayer are sufficient to put the IRS on notice of the pertinent claim. The facts of that case are distinguishable from the facts before us. The 1992 return was not directed to an official whose general responsibilities and interactions with petitioners were sufficient to put the IRS on notice of a refund claim.

### 6. Other Contacts

Finally, petitioners have not shown that, on or before October 15, 1996 (the last day for making a claim for a refund

attributable to an NOL carryback from 1992), they provided information to any other official at the IRS so as to put respondent on notice that petitioners had claims for refunds attributable to carrybacks of the 1992 NOL. They did not provide such information to Special Agent Raven, nor did they convey it by the February 14 letter or otherwise.

C. Conclusion

Petitioners did not make informal claims for refunds attributable to NOL carrybacks from 1992 to 1989 and 1990 before the expiration on October 15, 1996, of the period for doing so.

IV. Conclusion

Petitioners are not entitled to NOL carrybacks in the amounts of $31,113 and $12,810, to 1989 and 1990, respectively.

Decision will be entered
under Rule 155.